******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ERNEST FRANCIS
(AC 34701)

Sheldon, Keller and West, Js.

*Argued September 26, 2013—officially released March 11, 2014*

(Appeal from Superior Court, judicial district of Hartford, Miano, J. [criminal judgment]; Gold, J. [motion to correct].)

*Ernest Francis*, self-represented, the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Edward R. Narus*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Ernest Francis, appeals from the denial of his third postconviction motion to correct illegal sentence under Practice Book § 43-22[1] following his 1992 conviction and sentencing to fifty years in prison on the charge of murder.[2] On appeal, the defendant claims initially that the court, *Gold, J.*, erred in denying his motion to correct by rejecting his substantive claims that the sentencing court, *Miano, J.*, imposed the challenged sentence upon him in an illegal manner by: (1) relying upon an inaccurate understanding of the manner in which he committed the underlying crime;[3] (2) drawing and relying upon unfair inferences about his character and escalating criminal career prior to the crime based upon inaccurate information about his criminal history;[4] and (3) making incorrect assumptions about his mental state at the time of the crime.[5] The defendant also claims that the court erred procedurally in adjudicating his motion to correct by denying his accompanying request for the appointment of counsel to represent him on the motion based upon the unexplicated conclusion of a reviewing public defender that the motion lacked sufficient merit to warrant making the requested appointment. The defendant argues that the court's challenged ruling on his request for appointed counsel violated his rights, as an indigent defendant, under both General Statutes § 51-296 (a),[6] as interpreted and applied in *State* v. *Casiano*, 282 Conn. 614, 627, 922 A.2d 1065 (2007) (holding that indigent criminal defendant has statutory right to appointed counsel on motion to correct under § 51-296 [a]), and the due process and equal protection clauses of our state and federal constitutions.[7] The defendant argues, more particularly, that the court's ruling violated his right to appointed counsel because it was made under procedures that failed to comply with the minimum constitutional requirements for ruling on motions by appointed counsel to withdraw from criminal appeals on the ground of frivolousness, as articulated by the United States Supreme Court in *Anders* v. *California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and long enforced in this state in all postconviction proceedings in which indigent defendants have the statutory or constitutional right to appointed counsel.

We agree with the defendant that the court's denial of his request for appointed counsel on his motion to correct was improperly made under procedures that failed to comply with the requirements of *Anders*, which we find to be enforceable as part of his right to appointed counsel under § 51-296 (a). We thus conclude that the court's judgment denying the motion to correct must be reversed, and this case must be remanded for further proceedings on the defendant's motion to correct consistent with this opinion.

I

The following procedural history is relevant to our resolution of this appeal. The defendant, representing himself, filed the present motion to correct on July 12, 2010, and later amended it on October 12, 2010. On September 8, 2010, the date on which the motion was initially scheduled for a hearing, the court, *Gold, J.*, opened the hearing by engaging in the following colloquy with the defendant and public defender, R. Bruce Lorenzen:

"The Court: Let's do Francis. This is Mr. Francis's third motion to correct what he alleges is an illegal sentence. Are you doing this yourself or are you applying for the public defender to review the claim?

"The Defendant: I'd like to represent myself, Your Honor.

"The Court: Do you understand you have the right to apply for a public defender? The public defender would, pursuant to a case called *State* v. *Casiano*, review the file. If the public defender felt that there was some potential merit to your claim, the public defender would be appointed to represent you. If the public defender said no, that he or she didn't think there was sufficient likelihood of success, then you could do it yourself if you wanted to. But do you want to skip that step and just represent yourself?

"The Defendant: I was assuming that had happened when I first came in on *State* v. *Casiano* so we could save time. But I mean, if I—I'm going to apply for the public defender then.

"[Attorney Lorenzen]: Judge—

"The Court: Yes.

"[Attorney Lorenzen]: Hi, Mr. Francis.

"The Defendant: How you doing?

"[Attorney Lorenzen]: Bruce Lorenzen, Public Defender's Office. The clerk had alerted us to Mr. Francis's claim. I have reviewed it. May I have just a moment?

"(*Attorney Lorenzen speaking with the defendant.*)

"[Attorney Lorenzen]: Judge, again, I was made aware of this case and I've had an opportunity to review the motion as well as some previous files that our office has been involved in and my concern is not so much on legal merit but potentially on procedural grounds. There's a problem in terms of us being appointed.

"The Court: All right. So are you going to try to get a special?

"[Attorney Lorenzen]: It's not a conflict situation.

"The Court: It's not a conflict. So what are you proposing?

"[Attorney Lorenzen]: Judge, I really sympathize with

Mr. Francis's position and I've told him, there's an emotional merit to his claim because what he cites in his petition in terms of occurrences in court, as near as I can tell, did, in fact, occur. My concern is more, as the court started this proceeding by saying that this is the third petition, the problem is more whether or not it's been previously addressed.

"The Court: All right. I guess—

"[Attorney Lorenzen]: And so in the limited confines of *Casiano*, I think it would be my obligation to take the position that this claim does not have sufficient merit to justify appointment. But it's—as I'm probably sounding, it's a close call and it's not—it's a question of whether previous courts have been wrong and the way they look at things.

"The Court: The first order of business as far as I'm concerned on a motion to correct is to satisfy *Casiano*. So that's what I inquired. He said yes. Are you reporting then to the Court that based on your review of the allegations and—

"[Attorney Lorenzen]: It's my considered opinion that it does not have merit.

"The Court: All right. Well, then, thank you. Then, Mr. Francis, then you understand that means that you're going to pursue this either by hiring with the help of a lawyer that you hire yourself or else you'll do it yourself."

The defendant responded to the court's decision to deny his request for appointed counsel with the following objection to Lorenzen's failure to specify the grounds upon which he had concluded that the motion to correct lacked sufficient merit to warrant appointing counsel thereon:

"The Defendant: I understand the dictates of *State* v. *Casiano*. However, I think that *State* v. *Casiano*, everyone is overlooking *Andrews* v. *California*[8] as well as *Fredericks* v. *Douglas*,[9] which is a Connecticut case on when a lawyer feels that a case has no merit. Mr. Lorenzen comes in and he doesn't have anything on paper to point—to point-for-point issues that can, that I may be able to raise alternatively if he feels it has no merit. I think United States Supreme Court has already spoken in *Andrews* that whenever a lawyer seeks to withdraw or seeks to say that there's no merit to a claim, the Sixth Amendment have a right to have him file an *Andrew's* brief. I just want to put that on the record.

"The Court: All right.

"The Defendant: I just want to put that on the record. If the Court feels that he doesn't have to file an *Andrew's* brief that's an issue I'll take up on appeal.

"The Court: Yes. The Court's order is that Mr. Lorenzen has satisfied his responsibilities by having reviewed

your third motion and having represented to me that he does not feel the appointment of a public defender or a special public defender is warranted in this case."

The defendant then reiterated his request that Lorenzen state the specific grounds upon which he had relied in concluding that his motion to correct had no merit. This request was denied by the court in the following further colloquy with the defendant:

"The Defendant: . . . I don't want to waste too much time on this issue. What I'm saying is I'd like to know what the public defender's official position as to why the case had no merits. So I can address that also.

"The Court: Well—

"The Defendant: So I don't have to ask for articulation or rectification for that.

"The Court: I'm not going to require the public defender to assume that responsibility. The public defender has assessed it and it is his considered opinion, Mr. Lorenzen's, that this case perhaps considering the prior court's rulings by Judge Clifford and Judge Espinosa which deny previous petitions. I'm going to accept what Mr. Lorenzen says.

"The Defendant: Okay.

"The Court: And I don't believe he's under any obligation to explain that any further.

"The Defendant: I would just like to say that the issue was never addressed. It's not res judicata or collateral estoppel because it was never raised before.

"The Court: Oh, I'm not—

"The Defendant: Mr. Lorenzen's position that it was addressed before as he conveyed to me, this issue was never addressed.

"The Court: I don't think that's what Mr. Lorenzen said at all. He mentioned prior proceedings but he has assessed the merit of the claim that's now before this Court and has determined there's an insufficient likelihood of success and therefore has pursuant to *Casiano* indicated to me that his office should not be appointed."

The defendant went on to represent himself on his motion to correct at a hearing held on February 18, 2011. The court, *Gold, J.*, denied that motion on the merits in a memorandum of decision issued on June 7, 2011.[10] This appeal followed.

## II

We begin our discussion of the defendant's right to counsel claim by addressing our ability to hear this claim on appeal. The state argues that the defendant's appeal is improper because the only proper vehicle for challenging a trial court's order denying a request for the appointment of counsel is a motion for review under

Practice Book § 63-7, which provides, in part, that "[t]he sole remedy of any defendant desiring the court to review an order concerning . . . the appointment of counsel shall be by motion for review. . . ." We reject that argument, under the authority of *State* v. *Scott*, 139 Conn. App. 333, 340 n.6, 55 A.3d 608 (2012), wherein this court held that Practice Book § 63-7 applies only to the appointment of *appellate* counsel, not to the appointment of *trial* counsel. Here, then, as in *Scott*, the defendant's "challenge [to] the trial court's denial of his *Casiano* request . . . is properly before this court on appeal." Id.

### III

Having determined that we may properly hear the defendant's right to counsel claim on appeal, we now turn to the merits of that claim. The defendant contends, to reiterate, that the court violated his right to appointed counsel on his motion to correct, under both § 51-296 (a) and the due process and equal protection clauses of the state and federal constitutions, by denying his request for counsel based solely upon the unexplicated conclusion of the public defender who reviewed the motion that it lacked sufficient merit to warrant making the requested appointment. That ruling, the defendant claims, violated his statutory and constitutional right to counsel on the motion because it was made under procedures which failed to comply with the minimum constitutional requirements established by the United States Supreme Court in *Anders* for determining if appointed counsel for an indigent criminal defendant on appeal should be permitted to withdraw from the appeal on the ground that his client's claims are frivolous. In *Anders*, the Supreme Court held that: "[I]f counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. . . . [I]f [the court] finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." *Anders* v. *California*, supra, 386 U.S. 744. Claiming that the *Anders* requirements apply with equal force to an indigent criminal defendant's right to appointed counsel on a motion to correct as on appeal, the defendant argues that the procedure by which the court adjudicated his request for appointed counsel in this case violated those requirements in several ways.

First, he claims that the court erred by failing to appoint counsel to represent him personally in connection with his request for counsel on the motion, and to serve as his own legal representative and counselor for that purpose, rather than as an amicus curiae or a neutral agent of the court. Second, he claims that the court

erred by failing to require the public defender, who was asked to evaluate the possible merits of his motion, to base his evaluation upon a conscientious review of the trial court record, examined in light of controlling legal authorities, and then to share the results of that evaluation with both him and the court, in the form of a brief identifying all possible grounds upon which to support his claims on the motion. Third, he claims that the court erred by denying his request for appointed counsel on the motion based upon the public defender's evaluation of its potential merits without making its own review of the record and independent evaluation of the motion's potential merits before personally concluding that the motion was wholly frivolous.

Turning first, as we must, to the defendant's statutory argument that the procedure by which the court ruled on his request for appointed counsel violated his rights under § 51-296 (a),[11] we note initially that this aspect of his right to counsel claim is governed by *Casiano* and other controlling cases from this court and our Supreme Court that have interpreted and applied that statute. Those authorities, he correctly argues, have clearly established that, following the determination of a defendant's indigency, such an indigent defendant's statutory right to appointed counsel "in any criminal action" under § 51-296 (a) applies both to all proceedings before the trial court in a Connecticut criminal case and to all postconviction proceedings in which the defendant challenges the legality of his resulting criminal conviction or sentence.

As for postconviction challenges to criminal convictions or sentences, our Supreme Court held, in *Gipson* v. *Commissioner of Correction*, 257 Conn. 632, 638, 778 A.2d 121 (2001), that § 51-296 (a) affords indigent criminal defendants the right to appointed counsel in all appeals from their convictions or sentences, including both direct appeals from such convictions or sentences, and discretionary appeals to the Supreme Court, on petitions for certification, from this court's rulings on direct appeal. *Gipson* thus extended the indigent defendant's statutory right to appointed counsel under § 51-296 (a) to appeals in which there is no corresponding constitutional right to appointed counsel. Compare *Douglas* v. *California*, 372 U.S. 353, 83 S. Ct. 814, 357–58, 9 L. Ed. 2d 811 (1963) (holding that state court's failure to appoint counsel for indigent criminal defendant on his first appeal as of right from criminal conviction or sentence violates his rights under equal protection clause of fourteenth amendment to United States Constitution), with *Ross* v. *Moffitt*, 417 U.S. 600, 612, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974) (refusing to extend equal protection right of indigent criminal defendant to appointed counsel from his first appeal as of right from his criminal conviction or sentence to preparation of petition for discretionary appellate review after rejection of his first appeal).

More recently, moreover, in *State* v. *Casiano*, supra, 282 Conn. 626, our Supreme Court ruled that § 51-296 (a) extends the indigent criminal defendant's statutory right to appointed counsel on appeal to postconviction motions to correct, because a motion to correct is a well established,[12] and sometimes preferable,[13] alternative to an appeal for challenging the legality of a criminal sentence. Due to the functional equivalency between motions to correct and criminal appeals as vehicles for challenging the legality of criminal sentences as a matter of right, the court in *Casiano* held that an indigent defendant is no less entitled to the assistance of appointed counsel on a motion to correct than on a criminal appeal.[14] Id., 627; *Sinchak* v. *Commissioner of Correction*, 126 Conn. App. 684, 690, 14 A.3d 343 (2011) ("[*Casiano*] reasoned that a motion to correct an illegal sentence is an alternate route equivalent to an appeal of an illegal sentence and, because § 51-296 [a] provides counsel for such an appeal, the statutory right to counsel logically extends to the equivalent motion.").[15] This ruling, like our Supreme Court's earlier ruling in *Gipson*, was limited to the statutory claim raised on appeal, in that the court expressly declined to reach the defendant's parallel constitutional claims.

Consistent with its conclusion that an indigent criminal defendant has the same statutory right to appointed counsel under § 51-296 (a) on a motion to correct as on appeal, the court in *Casiano* made it clear that that right, like the right to appointed counsel on appeal, is not unlimited, in the sense that it does not afford the defendant the right to appointed counsel for the prosecution of frivolous claims. *State* v. *Casiano*, supra, 282 Conn. 627–28. Although no mention of the frivolous claims exception to the right to appointed counsel appears in the text of § 51-296 (a), that exception has long been enforced in this state as to the right of indigent defendants to appointed counsel on appeal under the previously described procedures prescribed by the United States Supreme Court in *Anders* v. *California*, supra, 386 U.S. 744. See, e.g., *State* v. *Pascucci*, 161 Conn. 382, 386–87, 288 A.2d 408 (1971).

Although the United States Supreme Court later clarified, in *Smith* v. *Robbins*, 528 U.S. 259, 265, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000), that *Anders* established only general guidelines for enforcing the frivolous claims exception to the indigent criminal defendant's constitutional right to appointed counsel on appeal, from which a state could freely deviate if the alternative procedures it adopted to enforce that right met minimum constitutional standards, neither our legislature nor our judiciary has ever adopted any such alternative procedures for ruling on requests by appointed counsel to withdraw from criminal appeals on the ground of frivolousness.[16] Hence, the *Anders* procedure remains, to this day, the applicable procedure for adjudicating

motions by appointed counsel to withdraw from Connecticut criminal appeals on the ground of frivolousness.

The *Anders* procedure, as enforced in this state,[17] has been held to afford an indigent defendant on appeal each of the rights that the defendant claims to have been violated by the court in this case, including: (1) the right to personal representation by appointed counsel, as his own counselor and legal representative rather than as a neutral officer of the court;[18] (2) the right to have appointed counsel, who seeks to withdraw from the case on the ground of frivolousness, base his evaluation of the merits of the defendant's claims upon a conscientious review of the record, examined in the light of controlling legal authorities, and to inform the defendant and the court of the results of that evaluation in a brief listing all possible grounds for supporting the defendant's claims;[19] and (3) the right to have the court make its own evaluation of the merits of his claims and to conclude independently that such claims have no merit before granting counsel's motion to withdraw.[20]

Against this background, having expressly equated the right to appointed counsel on a motion to correct to the right to appointed counsel on appeal, the court in *Casiano* described the procedure to be followed in ruling on an indigent defendant's request for the appointment of counsel on a motion to correct: "[A] defendant has a right to the appointment of counsel for the purpose of determining whether a defendant who wishes to file such a motion has a sound basis for doing so. If appointed counsel determines that such a basis exists, the defendant also has the right to the assistance of such counsel for the purpose of preparing and filing such a motion and, thereafter, for the purpose of any direct appeal from the denial of that motion." *State* v. *Casiano*, supra, 282 Conn. 627–28.

Although the foregoing holding clarifies certain aspects of the procedure by which a trial court must enforce an indigent defendant's right to appointed counsel on a motion to correct, it fails to address, or thus to shed light on, other important aspects of that procedure. To begin with, the ruling clarifies that when an indigent defendant first makes a request for appointed counsel on a motion to correct, the court must grant the request as a threshold matter so that counsel can assist the defendant in connection with his request for representation itself. That, of course, is the implication of the court's statement in its ruling that, "[i]f appointed counsel determines that such [a sound] basis exists [for the filing of a motion to correct], the defendant *also has the right to the assistance of such counsel* for the purpose of preparing and filing such a motion." (Emphasis added.) Id. The ruling also clarifies that appointed counsel's first obligation to the defendant in the course of rendering such assistance to him is to determine

whether there exists a sound basis for filing or further prosecuting his motion to correct. This obligation necessarily requires counsel to exercise diligence on behalf of his client by exploring all potentially viable factual and legal bases for his motion to correct, then sharing the results of his labors with his client, to whom he also owes a duty of loyalty. Finally the ruling clarifies that if appointed counsel determines that there *is* a sound basis for any of his client's claims, he must continue to assist his client by representing him on his motion, both in the trial court and, if necessary, on direct appeal from its denial.

In each of these ways, the procedure prescribed by the court in *Casiano* for enforcing the frivolous claims exception to the indigent defendant's right to appointed counsel on a motion to correct is consistent with the procedure prescribed by *Anders* for enforcing that exception as to the right to appointed counsel on appeal when ruling on a motion by appointed counsel to withdraw from an appeal on the ground of frivolousness. Both procedures contemplate that counsel will be appointed to represent the defendant in connection with his request for appointed counsel before any determination of frivolousness is made and that, if counsel determines that there *is* a sound basis for any of his client's claims, he will continue to represent his client on the merits of those claims without further action by the court.

What the *Casiano* decision does not address or answer, however, are the following questions that are squarely raised in this case. First, what minimum steps must appointed counsel take to evaluate the potential merits of his client's claims before concluding that there is no sound basis for any of those claims? Second, if appointed counsel concludes that there is *no* sound basis for any of his client's claims, what steps must he take to advise his client and the court of that conclusion? Third, when the court is apprised of appointed counsel's conclusion that there is no sound basis for any of his client's claims, what steps, if any, must the court itself take to validate that conclusion before enforcing the frivolous claims exception against him by terminating his counsel's appointment on the motion?

The state contends that *Casiano* does not answer these questions because the limited procedures set forth therein are all that are statutorily required of appointed counsel before the court rules on the request of an indigent defendant for appointed counsel on a motion to correct. It thus claims that a reviewing public defender's only task is to review the defendant's motion to correct, to decide on that basis if any of the claims made in it have a sound basis, and to report his bottom-line conclusion to the court, without necessarily explaining the basis for that conclusion or the steps he took in reaching it. In the state's view, the final decision

as to whether the defendant's request for appointed counsel should be granted has been left entirely to the reviewing public defender, whose determination of the matter is final and unreviewable, either in the trial court or on appeal.

The defendant disagrees with the state's argument on this issue, claiming that, because the express rationale in *Casiano* for extending the statutory right to counsel "in any criminal action" from appeals to motions to correct is that such motions are functionally equivalent to appeals as vehicles for challenging the legality of criminal sentences, his right to appointed counsel on a motion to correct must be identical to, and thus be protected by, the same procedural safeguards as used to protect his right to appointed counsel on appeal. The defendant thus claims that the answers to the foregoing questions must be supplied by *Anders* and its progeny, which govern motions by appointed counsel for indigent defendants to withdraw from Connecticut criminal appeals on the ground of frivolousness. The defendant thus concludes that the court erred by ruling on his request for appointed counsel in this case without complying fully with the *Anders* requirements. For the following reasons, we agree with the defendant.

There are two principal reasons why we agree with the defendant that the *Anders* requirements are enforceable as to an indigent defendant's statutory right to appointed counsel on a motion to correct. First, the logic of the defendant's basic argument on that issue is compelling, because, as he rightly argues, the court in *Casiano* expressly equated the importance of a motion to correct to that of a criminal appeal for the purpose of challenging the legality of a criminal sentence, and thus extended the same right to appointed counsel to the former as to the latter. That logic, by extension, compels the conclusion that the same procedures that have long been used to protect the right to appointed counsel on appeal, including the *Anders* procedure for enforcing the frivolous claims exception to that right, must be used to protect the equivalent right to appointed counsel on a motion to correct.

Second, although neither this court nor our Supreme Court has ever decided this precise issue with respect to the statutory right to appointed counsel on a motion to correct, this court has previously applied the *Anders* procedure to motions by appointed counsel to withdraw from other postconviction proceedings in which their indigent clients had a statutory right to appointed counsel under § 51-296 (a). In *Franko* v. *Bronson*, 19 Conn. App. 686, 563 A.2d 1036 (1989) (en banc), this court had before it two motions to review orders by trial courts denying motions by appointed counsel to withdraw from appeals in postconviction habeas corpus proceedings on the ground of frivolousness. Each counsel had filed an *Anders* brief in support of his motion

to withdraw. In deciding to reach the merits of the two motions despite the lateness of their filing, the court in *Franko* explained, and then analyzed, the issues before it as follows: "Each motion essentially seeks our review of the presiding judge's denial of appellate counsel's motion to withdraw. Before we address the merits of these motions, we must decide whether the procedure set out in *Anders* . . . and codified in Practice Book §§ 952 through 956 . . . applies in the context of appeals from habeas corpus judgments.

"Although *Anders* was a habeas corpus action, the opinion in that case focuses only upon the extent of the duty of court-appointed appellate counsel to prosecute a *first* appeal from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal. . . . Practice Book §§ 952 through 956 implement the *Anders* principle.[21] The *Anders* decision is based upon constitutional requirements guaranteed by the sixth amendment in criminal cases. There is, however, no equivalent constitutional right to counsel in habeas corpus cases. . . .

"Although the *Anders* procedure is not, therefore, constitutionally required in habeas corpus appeals, we look beyond this constitutional limitation to the existence of General Statutes § 51-296, which creates a statutory right to counsel in certain habeas corpus actions. That section mandates that counsel be appointed for an indigent defendant [i]n any criminal action, *in any habeas court proceeding arising from a criminal matter*, in any extradition proceeding, or in any delinquency matter . . . . We conclude, moreover, that General Statutes § 51-296 applies as well to appeals from such habeas corpus proceedings, because no such appeal may be taken unless an appropriate judicial authority has certified pursuant to General Statutes § 52-470 (b) that a question is involved in the decision which ought to be reviewed by the court having jurisdiction . . . .

"Because the legislature has created a right to counsel in habeas corpus cases under § 51-296, and in appeals therefrom, we conclude that the right to appeal in habeas corpus actions should be extended the same protections as those set out in the *Anders* decision. We, therefore, follow the procedure set out in Practice Book § 4035 and §§ 952 through 956[22] . . . by referring motions to withdraw based on *Anders* briefs to the presiding judge of the trial court in those habeas corpus matters specified in General Statutes § 51-296." (Citations omitted; emphasis in original; footnotes added; internal quotation marks omitted.) Id., 691–92.

The upshot of the *Franko* decision is that the frivolous claims exception to the indigent defendant's statutory right to appointed counsel under § 51-296 (a) is enforceable under the *Anders* procedures in all proceedings to which that right has been extended, whether or not the defendant has a corresponding con-

stitutional right to counsel in any such proceeding. The *Anders* procedures must therefore be complied with by trial courts whenever they have occasion to enforce the frivolous claims exception to an indigent defendant's statutory right to appointed counsel on a motion to correct.[23]

In the present case, none of the constitutional requirements set forth by the United States Supreme Court in *Anders* were satisfied by the manner in which the trial court adjudicated the defendant's request for appointed counsel on his motion to correct. First, the court did not appoint Lorenzen to represent the defendant in the prosecution of his motion to correct. Instead, Lorenzen was advised of the defendant's motion by the clerk's office prior to the case being called, and he reviewed the motion and certain other, unspecified files in his office, never describing in detail to the court the substance of any discussions with the defendant about the claims he wished to make in his motion. Lorenzen never elaborated further about his review of the defendant's claims, and the court expressly refused to order that he do so. Lorenzen did not, at any time after making his determination that the defendant's claim lacked sufficient merit to justify appointment, explain his findings to the defendant, as any attorney, appointed or privately retained, must do, at a bare minimum, out of courtesy, professional loyalty, and respect for his own client. Rather, the record reflects that Lorenzen was not appointed to act as the defendant's personal counsel for the purpose of determining if the defendant's motion to correct was frivolous, but only to serve as a neutral agent of the court.

The record also does not establish that Lorenzen conducted either a diligent review of all relevant parts of the record or an examination of relevant case law concerning the defendant's claims before concluding that those claims lacked sufficient merit to warrant granting the defendant's request for appointed counsel. In the end, moreover, Lorenzen's conclusory statements that the motion did "not have sufficient merit to justify appointment" and that "[i]t's my considered opinion that it does not have merit," were insufficient to satisfy the minimum requirements of *Anders*.

Finally, only one tier of review was performed as to the potential merits of the defendant's motion to correct, by a public defender who was not appointed to represent the defendant's personal interests, before the court denied his request for appointed counsel on the motion. Indeed, as soon as Lorenzen announced his conclusion, in open court, that the motion had insufficient merit to warrant granting the defendant's request for the appointment of counsel, the court simply adopted that conclusion as its own, declaring: "All right. Well, then, thank you. Then, Mr. Francis, then you understand that means that you're going to pursue this

either by hiring with the help of a lawyer that you hire yourself or else you'll do it yourself." Moments later, when the defendant challenged the unexplained basis for Lorenzen's conclusion, the court simply endorsed that conclusion because Lorenzen had reached it, stating that, "Mr. Lorenzen has satisfied his responsibilities by having reviewed your third motion and having represented to me that he does not feel the appointment of a public defender or a special public defender is warranted in this case." The court thus denied the defendant's request for counsel on his motion to correct without ever conducting its own review of the record or of the relevant legal authorities potentially supporting the motion, much less independently concluding that the motion was wholly without merit. In so doing, the court failed to comply with the requirements of *Anders*, and thus violated the defendant's right to appointed counsel on his motion to correct under § 51-296 (a).

The court's failure to appoint Lorenzen to represent the defendant's interests by conducting a conscientious first tier of review of relevant portions of the record in light of controlling legal authorities to determine whether the defendant's claim was wholly frivolous, Lorenzen's failure to explain his findings to either the defendant or the court beyond a mere conclusory statement, as well as the court's failure to perform its own independent, second tier of review of the record in light of controlling legal authorities to make its own determination as to whether the defendant's claims were wholly frivolous, violated the minimum requirements of *Anders*, and the defendant's right to appointed counsel on his motion under § 51-296 (a). Accordingly, we remand this case for further proceedings consistent with this opinion on the defendant's motion to correct and his accompanying request for appointment of counsel in connection therewith.[24]

The judgment is reversed and the case is remanded for a new hearing on the motion for appointment of counsel and on the motion to correct in accordance with this opinion.

In this opinion the other judges concurred.

[1] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[2] The defendant's conviction was affirmed on direct appeal. *State* v. *Francis*, 228 Conn. 118, 635 A.2d 762 (1993). Following that appeal, "[t]he defendant filed his first motion to correct an illegal sentence in 2001, in which he alleged that the sentencing court denied his right to speak in mitigation of punishment, relied on inaccurate information and failed to rely on information solely within the record. The trial court, *Clifford, J.*, denied the motion on the merits. On appeal, the Appellate Court found that the trial court lacked jurisdiction to consider the motion to correct because the defendant's claims did not attack the validity of the sentence, and remanded the case with direction that the motion be dismissed. . . . The defendant filed a second motion to correct that was denied on the merits by the trial court, *Espinosa, J.*, in a memorandum of decision dated November 18, 2005. In that motion, the defendant alleged that the sentencing court improperly

signed his arrest warrant and presided over his probable cause hearing. The Appellate Court summarily affirmed the judgment of the trial court in a per curiam decision." (Citation omitted; internal quotation marks omitted.)

[3] The defendant claims that the sentencing court made inaccurate findings about the number of stab wounds inflicted upon the victim in the course of the murder. The court found that the defendant delivered two blows to the victim, while the defendant claims that the evidence established that only one blow was delivered to the victim.

[4] The defendant argues that the sentencing court relied upon an inaccurate assessment of his criminal history, finding as follows: "Here is a young man that at age sixteen was convicted of possession of narcotics; at age seventeen was convicted of conspiracy to sell cocaine; at age seventeen, assault in the third degree; and now murder, and he's only nineteen years old. Three felony convictions at age nineteen. On probation at the time of the instant offense. . . . He is that portion of a small segment of our criminal population which commits a disproportionately large number of crimes. At age nineteen, this gentleman is a repeat felony offender. And again, the fact that he was on probation . . . with four years over his head didn't dissuade or deter him or break his stride for a moment."

The defendant claims that the criminal history relied upon by the sentencing court was inaccurate because he had not been convicted of conspiracy to sell narcotics, but rather was convicted only of conspiracy to possess narcotics. Further, he claims that the probation violation upon which the court relied was inaccurate because the requirements under General Statutes § 53a-60b of the crime of assault in the third degree of a victim over age sixty, for which he was on probation, were not established because the victim was only sixteen years old. He claims that the sentencing court should not have relied on the fact that he was on probation at the time of the crime before first correcting the term of his probation under the correct statute, specifically, General Statutes § 53a-61.

[5] The defendant claims that the sentencing court failed to afford him the opportunity to present evidence of his mental state at the time of the murder, which he claims would have placed the attack between the victim and the defendant that occurred in prison prior to the murder in a clearer context. The defendant claims that the attack led him to develop post-traumatic stress disorder, which caused him to have an extreme emotional reaction to this event at the time of the murder.

[6] General Statutes § 51-296 (a) provides in relevant part: "In any criminal action . . . the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant . . . ."

[7] U.S. Const., amend. XIV; Conn. Const., art. I, §§ 8, 20.

[8] Consistent with the representations of the defendant on appeal, we treat his references to "*Andrews*" as referring to *Anders* v. *California*, supra, 386 U.S. 738.

[9] From the context of the defendant's comments, it appears as if he conflated the names of two cases. We believe he was referring to *Fredericks* v. *Reincke*, 152 Conn. 501, 208 A.2d 756 (1965), in which our Supreme Court followed the dictates of the United States Supreme Court's decision in *Douglas* v. *California*, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963).

[10] In its memorandum of decision, the court held, despite the state's argument to the contrary, that "it is inappropriate to invoke the doctrine of res judicata to preclude the defendant from advancing these claims now."

[11] See *State* v. *Casiano*, supra, 282 Conn. 616 n.3 ("The defendant also claims that he has a right under the federal and state constitutions to the assistance of counsel in connection with his appeal from the denial of his motion to correct an illegal sentence. Because we conclude that the defendant is entitled to the appointment of counsel under § 51-296 [a], we do not reach the defendant's constitutional claim. See, e.g., *State* v. *Smith*, 280 Conn. 285, 295 n.6, 907 A.2d 73 [2006] [this court generally eschews unnecessary determinations of constitutional issues].").

[12] "[A] defendant may challenge his or her criminal sentence on the ground that it is illegal by raising the issue on direct appeal or by filing a motion pursuant to [Practice Book] § 43-22 with the judicial authority, namely, the trial court." (Internal quotation marks omitted.) *State* v. *Tabone*, 279 Conn. 527, 534, 902 A.2d 1058 (2006).

[13] "[I]t is to a defendant's advantage to move in the trial court, pursuant to [Practice Book § 43-22] to correct a purportedly illegal sentence after the

sentence is imposed. This method would ordinarily yield a more prompt consideration of [a] defendant's challenge to the sentence than would the filing of a petition for habeas corpus, which usually entails considerably more delay than does a motion pursuant to [§ 43-22]. . . . We therefore conclude that, in order to challenge an illegal sentence, a defendant either must appeal the sentence directly or file a motion to correct the sentence pursuant to § 43-22 with the trial court . . . ." (Citations omitted; internal quotation marks omitted.) *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 38–39, 779 A.2d 80 (2001).

[14] Section 51-296 (a) broadly applies to "any criminal action," a term that is not defined by the statute, but that has been clarified by this court to "[include] all appeals, including petitions for certification, and not just first appeals as of right." *Sinchak* v. *Commissioner of Correction*, supra, 126 Conn. App. 689. The court in *Casiano* held that "a motion to correct an illegal sentence falls within the purview of 'any criminal action' for purposes of § 51-296 (a)." *State* v. *Casiano*, supra, 282 Conn. 625.

[15] This court, relying on *Casiano*, also analogized an indigent defendant's right to counsel for the preparation and filing of an initial habeas corpus proceeding to the filing of a habeas on a habeas. *Sinchak* v. *Commissioner of Correction*, supra, 126 Conn. App. 690 ("[A] habeas on a habeas is equivalent to an initial ineffective assistance habeas because both require the same proof and offer the same remedy. . . . By logical extension, then, § 51-296 (a), which applies to an initial ineffective assistance habeas, applies equally to a habeas on a habeas." [Citation omitted.]).

[16] See *Lorthe* v. *Commissioner of Correction*, 103 Conn. App. 662, 676, 931 A.2d 348 (holding that "*Anders* and *Pascucci* stand for the proposition that when a motion to withdraw as counsel is filed asserting that there are no nonfrivolous issues on appeal, the court is required to review the entire record before it, including the pleadings and evidence"), cert. denied, 284 Conn. 939, 937 A.2d 696 (2007); *Vazquez* v. *Commissioner of Correction*, 88 Conn. App. 226, 228 n.2, 869 A.2d 234 (2005) (stating that *Anders* has "establish[ed] constitutionally required procedures to be followed by counsel and courts in cases in which counsel believes that appeal is frivolous"); see also Practice Book §§ 44-33 through 44-37 (establishing procedure in Superior Court criminal matters, in accordance with *Anders*, for appointment of initial counsel for appeals by indigent defendants, counsel's request to withdraw from such appointment, submission by counsel of brief in support of such request to withdraw, and findings to be made by court prior to granting or denying counsel's request to withdraw).

[17] Our Supreme Court, following the *Anders* decision, held that "the record should fully disclose that there has been full compliance with the federal requirements specified in *Anders* . . . and that the judicial determination required by that decision has been made." *State* v. *Pascucci*, supra, 161 Conn. 387. The *Anders* procedure has been described by this court as follows: "[I]f appointed counsel . . . believes that there are no nonfrivolous issues and seeks to withdraw by filing an *Anders* brief, the motion, brief and transcript, if any, of the pertinent proceedings shall be filed with the appellate clerk . . . . [The court] shall examine fully the briefs of counsel and shall review the transcript if any is filed. If, after such examination, the court concludes that the appeal is wholly frivolous, the court may grant counsel's motion for leave to withdraw appearance and refuse to appoint new counsel. Before refusing to appoint new counsel, the court shall make a finding that the appeal is wholly frivolous and shall file a memorandum setting forth the basis for this finding . . . . If after a full examination the court concludes . . . that the appeal is not wholly frivolous, it may allow counsel to withdraw and appoint new counsel to represent the petitioner, or it may deny the motion for leave to withdraw appearance and order counsel of record to proceed with the appeal." (Citations omitted.) *Vazquez* v. *Commissioner of Correction*, supra, 88 Conn. App. 234.

[18] See *State* v. *Pascucci*, supra, 161 Conn. 386 (holding that appointed counsel must serve "as an active and conscientious advocate to the full extent of his professional responsibility and obligation").

[19] See *State* v. *Pascucci*, supra, 161 Conn. 386 (explaining that "the brief or report required from counsel" should contain "ready references not only to the record, but also to . . . legal authorities . . ." [internal quotation marks omitted]). The purpose of the *Anders* brief is for counsel to provide the defendant with specific references "to anything in the record that might arguably support the appeal." *Anders* v. *California*, supra, 386 U.S. 744. The purpose of the brief is not for counsel to articulate to the court arguments in support of counsel's motion to withdraw from representation. Thus, there

is no conflict of interest for counsel to provide the defendant with a brief referencing those salient arguments while at the same time moving the court to withdraw from representation on the ground that the defendant's claims are frivolous. The determination of frivolousness is ultimately the court's determination, after conducting its own independent review of the record in light of controlling law and the brief supplied by counsel.

[20] See *State* v. *Pascucci*, supra, 161 Conn. 386–87 ("[T]he *Anders* case . . . specifies that the court—not counsel . . . after a full examination of all the proceedings . . . decide[s] whether the case is wholly frivolous. . . . [I]t would be highly desirable for the trial court to make certain that the record disclose that the procedures specified in the *Anders* case have been strictly followed and, while it is unnecessary for the court to state its reasons for a decision that an appeal is wholly frivolous, a memorandum of decision explaining the basis of the decision of the court would obviously be especially desirable." [Citations omitted; internal quotation marks omitted.]).

[21] See Practice Book §§ 44-33 through 44-37 and footnote 16 of this opinion.

[22] See Practice Book §§ 44-33 through 44-37 and footnote 16 of this opinion.

[23] This conclusion is not affected by our Supreme Court's recognition, subsequent to *Franko*, of a habeas petitioner's right to appeal from the dismissal of his habeas petition even if the habeas court denies his petition for certification to appeal. See *Simms* v. *Warden*, 229 Conn. 178, 181–82, 640 A.2d 601 (1994); *Simms* v. *Warden*, 230 Conn. 608, 609, 646 A.2d 126 (1994). As this court explained in *Vasquez* v. *Commissioner*, supra, 88 Conn. App. 234, the *Simms* decisions affected only the procedure by which counsel's motion to withdraw from a habeas appeal on the ground of frivolousness must be routed to and decided by the habeas court instead of the presiding judge, *not* the obligations of habeas counsel or habeas courts to comply fully with *Anders* whenever they, respectively, seek to withdraw from habeas appeals on the ground of frivolousness or adjudicate such motions to withdraw. The court in *Vasquez* thus clarified that, "to the extent that the procedure set forth in *Franko* is inconsistent with the Supreme Court's decisions in *Simms*, it is no longer good law. In the future, if appointed counsel . . . believes that there are no nonfrivolous issues and seeks to withdraw by filing an *Anders* brief, the motion, brief and transcript, if any, of the pertinent proceedings shall be filed with the appellate clerk . . . . [The court] shall examine fully the briefs of counsel and shall review the transcript if any is filed. If, after such examination, the court concludes that the appeal is wholly frivolous, the court may grant counsel's motion for leave to withdraw appearance and refuse to appoint new counsel. Before refusing to appoint new counsel, the court shall make a finding that the appeal is wholly frivolous and shall file a memorandum setting forth the basis for this finding . . . . If after a full examination the court concludes . . . that the appeal is not wholly frivolous, it may allow counsel to withdraw and appoint new counsel to represent the petitioner, or it may deny the motion for leave to withdraw appearance and order counsel of record to proceed with the appeal." (Citations omitted.) *Vazquez* v. *Commissioner of Correction*, supra, 234. The court in *Vasquez* confirmed, by this ruling, that the frivolous claims exception to the purely statutory right to appointed counsel in habeas appeals under § 51-296 (a) remains enforceable to this date under *Anders*, despite the partial overruling of *Franko* on other grounds in the *Simms* decisions.

[24] On the basis of the foregoing analysis, we do not address the claims raised in the present appeal related to the court's ruling on the merits of the defendant's motion to correct.

————————————————