******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ERNEST FRANCIS
(SC 19378)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Robinson and Vertefeuille, Js.*

*Argued January 26—officially released August 2, 2016*

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Edward R. Narus*, former supervisory assistant state's attorney, for the appellant (state).

*Christopher Duby*, assigned counsel, with whom, was *Robert O'Brien*, assigned counsel, for the appellee (defendant).

*Opinion*

PALMER, J. The state appeals from the judgment of the Appellate Court, which reversed the trial court's denial of the request of the defendant, Ernest Francis, for the appointment of counsel to represent him in connection with the filing of a motion to correct an illegal sentence arising out of his 1992 conviction of murder.[1] In *State* v. *Casiano*, 282 Conn. 614, 627–28, 922 A.2d 1065 (2007), this court determined that, pursuant to General Statutes § 51-296 (a),[2] an indigent defendant has a right to the appointment of counsel for the purpose of determining whether a sound basis exists for him to file a motion to correct an illegal sentence, and, if such a basis is determined to exist, he also has the right to counsel for the purpose of pursuing the motion to its conclusion. On appeal, the state claims that the Appellate Court incorrectly concluded that the trial court was required to follow the procedure set forth in *Anders* v. *California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967),[3] before it properly could deny the defendant's request for the appointment of counsel on the ground that no sound basis existed for him to file a motion to correct. We conclude that the *Anders* procedure is not strictly required to safeguard the defendant's statutory right to counsel in the context of a motion to correct an illegal sentence. We further conclude, however, that the trial court improperly failed to appoint counsel to assist the defendant in determining whether there was a sound basis for him to file such a motion. Because we also conclude that this error was harmful to the defendant, the case must be remanded to the trial court so that counsel may be appointed to represent the defendant in accordance with the dictates of *Casiano*.

The opinion of the Appellate Court sets forth the following undisputed facts and procedural history. "Following [his direct] appeal, [t]he defendant filed his first motion to correct an illegal sentence in 2001, in which he alleged that the sentencing court denied his right to speak in mitigation of punishment, relied on inaccurate information and failed to rely on information solely within the record. The trial court . . . denied the motion on the merits. On appeal, the Appellate Court found that the trial court lacked jurisdiction to consider the motion to correct because the defendant's claims did not attack the validity of the sentence, and remanded the case with direction that the motion be dismissed. . . . The defendant filed a second motion to correct that was denied on the merits . . . [on] November 18, 2005. In that motion, the defendant alleged that the sentencing court improperly signed his arrest warrant and presided over his probable cause hearing. The Appellate Court summarily affirmed the [denial of the second motion to correct] . . . ." (Internal quotation marks omitted.) *State* v. *Francis*, 148

Conn. App. 565, 567 n.2, 86 A.3d 1059 (2014).

Thereafter, "[t]he defendant, representing himself, filed [a third] motion to correct on July 12, 2010, and later amended it on October 12, 2010. On September 8, 2010, the date on which the [third] motion was initially scheduled for a hearing, the court, *Gold, J.*, opened the hearing by engaging in the following colloquy with the defendant and [a] public defender, R. Bruce Lorenzen:

"The Court: . . . This is [the defendant's] third motion to correct what he alleges is an illegal sentence. Are you doing this yourself or are you applying for the public defender to review the claim?

"The Defendant: I'd like to represent myself, Your Honor.

"The Court: Do you understand you have the right to apply for a public defender? The public defender would, pursuant to . . . *State* v. *Casiano*, [supra, 282 Conn. 627–28] review the file. If the public defender felt that there was some potential merit to your claim, the public defender would be appointed to represent you. If the public defender said no, that [is, that] he or she didn't think there was sufficient likelihood of success, then you could do it yourself if you wanted to. But do you want to skip that step and just represent yourself?

"The Defendant: I was assuming that had happened when I first came in on . . . *Casiano* so we could save time. But I mean, if I—I'm going to apply for the public defender then.

"[Attorney Lorenzen]: Judge—

"The Court: Yes.

\* \* \*

"[Attorney Lorenzen]: [R.] Bruce Lorenzen, Public Defender's Office. The [court] clerk had alerted us to [the defendant's] claim. I have reviewed it. May I have just a moment?

\* \* \*

"[Attorney Lorenzen]: Judge, again, I was made aware of this case, and I've had an opportunity to review the motion as well as some previous files that our office has been involved in and my concern is not so much on legal merit but potentially on procedural grounds. There's a problem in terms of us being appointed.

"The Court: All right. So are you going to try to get a special [public defender]?

"[Attorney Lorenzen]: It's not a conflict situation.

"The Court: It's not a conflict. So what are you proposing?

"[Attorney Lorenzen]: Judge, I really sympathize with [the defendant's] position, and I've told him, there's an

emotional merit to his claim because what he cites in his petition in terms of occurrences in court, as near as I can tell, did, in fact, occur. My concern is more, as the court started this proceeding by saying, that this is the third [motion], the problem is more whether or not it's been previously addressed.

"The Court: All right. I guess—

"[Attorney Lorenzen]: And so in the limited confines of *Casiano*, I think it would be my obligation to take the position that this claim does not have sufficient merit to justify appointment. But it's—as I'm probably sounding, it's a close call, and it's not—it's a question of whether previous courts have been wrong and the way they look at things.

"The Court: The first order of business as far as I'm concerned on a motion to correct is to satisfy *Casiano*. So that's what I inquired [about]. He said yes. Are you reporting then to the [c]ourt that based on your review of the allegations and—

"[Attorney Lorenzen]: It's my considered opinion that it does not have merit.

"The Court: All right. Well, then, thank you. Then . . . you understand that means that you're going to pursue this either by hiring with the help of a lawyer that you hire yourself or else you'll do it yourself?

"The defendant responded to the court's decision to deny his request for appointed counsel with the following objection to [Attorney] Lorenzen's failure to specify the grounds [on] which he had concluded that the motion to correct lacked sufficient merit to warrant appointing counsel thereon:

"The Defendant: I understand the dictates of . . . *Casiano*. However, I think that . . . *Casiano*, everyone is overlooking [*Anders*] . . . as well as *Fredericks* v. [*Reincke*, 152 Conn. 501, 208 A.2d 756 (1965)], which is a Connecticut case on when a lawyer feels that a case has no merit. [Attorney] Lorenzen comes in and he doesn't have anything on paper to point . . . [to] issues that can, that I may be able to raise alternatively if he feels it has no merit. I think [the] United States Supreme Court has already spoken in [*Anders*] that whenever a lawyer seeks to withdraw or seeks to say that there's no merit to a claim, the [s]ixth [a]mendment [affords a defendant the] right to have [the lawyer] file an [*Anders*] brief. I just want to put that on the record.

"The Court: All right.

"The Defendant: I just want to put that on the record. If the [c]ourt feels that he doesn't have to file an [*Anders*] brief, that's an issue I'll take up on appeal.

"The Court: Yes. The [c]ourt's order is that [Attorney] Lorenzen has satisfied his responsibilities by having reviewed your third motion and having represented to

me that he does not feel the appointment of a public defender or a special public defender is warranted in this case.

"The defendant then reiterated his request that [Attorney] Lorenzen state the specific grounds [on] which he had relied in concluding that [the defendant's] motion to correct had no merit. This request was denied by the court in the following . . . colloquy with the defendant:

"The Defendant: . . . I don't want to waste too much time on this issue. What I'm saying is I'd like to know what [Attorney Lorenzen's] official position as to why the case had no merits, so I can address that also.

"The Court: Well—

"The Defendant: So I don't have to ask for articulation or rectification for that.

"The Court: I'm not going to require [Attorney Lorenzen] to assume that responsibility. [He] has assessed it, and it is his considered opinion, [Attorney] Lorenzen's, that this case, perhaps considering the prior court's rulings . . . deny[ing] [the] previous [motions to correct]. I'm going to accept what [Attorney] Lorenzen says.

"The Defendant: Okay.

"The Court: And I don't believe he's under any obligation to explain that any further.

"The Defendant: I would just like to say that the issue was never addressed. It's not res judicata or collateral estoppel because it was never raised before.

"The Court: Oh, I'm not—

"The Defendant: [Attorney] Lorenzen's position that it was addressed before as he conveyed to me, this issue was never addressed.

"The Court: I don't think that's what [Attorney] Lorenzen said at all. He mentioned prior proceedings, but he has assessed the merit of the claim that's now before this [c]ourt and has determined there's an insufficient likelihood of success and therefore has, pursuant to *Casiano*, indicated to me that his office should not be appointed.

"The defendant went on to represent himself [in connection with] his [third] motion to correct at a hearing held on February 18, 2011. The court, *Gold, J.*, denied that motion on the merits . . . on June 7, 2011." (Footnotes omitted; internal quotation marks omitted.) *State* v. *Francis*, supra, 148 Conn. App. 570–74.

Thereafter, the defendant appealed to the Appellate Court,[4] claiming, among other things, that the trial court had violated his right to counsel under § 51-296 (a) by denying his request for the assistance of counsel without adhering to the procedure set forth in *Anders* v.

*California*, supra, 386 U.S. 744.[5] See *State* v. *Francis*, supra, 148 Conn. App. 567, 575. In *Anders*, the United States Supreme Court determined that, in order to effectuate and safeguard an indigent defendant's constitutional right to the effective assistance of counsel, "counsel [who] finds his case [on appeal] to be wholly frivolous, after a conscientious examination of it . . . should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished [to] the indigent [defendant] and time allowed [for] him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned . . . ." (Internal quotation marks omitted.) *State* v. *Pascucci*, 161 Conn. 382, 385, 288 A.2d 408 (1971). The Appellate Court agreed with the defendant that the trial court should have followed *Anders* in denying his request for appointed counsel. *State* v. *Francis*, supra, 569. In reaching its conclusion, the Appellate Court noted that, although *Casiano* established an indigent defendant's right to counsel for the purpose of determining whether a sound basis exists for a motion to correct, it did not address the requirements of "sound basis" review, in particular, what steps appointed counsel must take in advising a defendant and the trial court of his or her determination that no sound basis exists for the filing of the motion to correct, and the steps the trial court must take to validate that determination. Id., 583–84. The Appellate Court then concluded that, "because the express rationale in *Casiano* for extending the statutory right to counsel . . . from appeals to motions to correct is that such motions are functionally equivalent to appeals as vehicles for challenging the legality of criminal sentences, [a criminal defendant's] right to appointed counsel on a motion to correct must be identical to, and thus be protected by, the same procedural safeguards [that are] used to protect [the] right to appointed counsel on appeal." Id., 584.

Having determined that *Anders* applied to the defendant's claim, the Appellate Court next considered whether the requirements of *Anders* were satisfied in the present case. The Appellate Court concluded that they were not satisfied in light of the trial court's "failure to appoint Lorenzen to represent the defendant's interests by conducting a conscientious first tier of review of relevant portions of the record in light of controlling legal authorities to determine whether the defendant's claim was wholly frivolous . . . . [The Appellate Court reasoned that] Lorenzen's failure to explain his findings to either the defendant or the court beyond a mere

conclusory statement, as well as the court's failure to perform its own independent, second tier of review of the record in light of controlling legal authorities to make its own determination as to whether the defendant's claims were wholly frivolous, violated the minimum requirements of *Anders* . . . and the defendant's right to appointed counsel [in connection with] his motion under § 51-296 (a)." Id., 590. Accordingly, the Appellate Court reversed the trial court's denial of the defendant's request for the appointment of counsel and remanded the case to that court for a new hearing on that motion. See id., 591.

On appeal to this court,[6] the state claims that the Appellate Court incorrectly determined that, pursuant to § 51-296 (a), the trial court was required to follow the *Anders* procedure before denying the defendant's request for the appointment of counsel. Specifically, the state challenges the conclusion of the Appellate Court that a motion to correct an illegal sentence is sufficiently similar to a direct appeal that the same procedures must govern the appointment of counsel in both contexts. See id., 585. According to the state, the *Anders* procedure is not necessary to safeguard the statutory right to counsel in the limited context of a motion to correct and will serve only to complicate and delay the resolution of a motion that was intended to be an expeditious mechanism for correcting an illegal sentence. Finally, the state claims that any deficiency in the process surrounding the trial court's denial of the defendant's request for counsel was harmless because the defendant's motion to correct was subsequently denied by that court on its merits.

Although we agree with the state that the *Anders* procedure is not needed to safeguard the statutory right to counsel in the context of a motion to correct an illegal sentence, our review of the record reveals that the trial court did not appoint counsel to represent the defendant even for the limited purpose of determining whether a sound basis existed for him to file his motion. We further conclude that this error was harmful to the defendant, and, consequently, the case must be remanded to the trial court so that counsel may be appointed to represent the defendant as required by *Casiano*.

Our analysis of this issue is guided by several well established principles. First, it is axiomatic that "[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner . . . ." Practice Book § 43-22. A motion to correct an illegal sentence "constitutes a narrow exception to the general rule that, once a defendant's sentence has begun, the authority of the sentencing court to modify that sentence terminates. . . . Indeed, [i]n order for the court to have jurisdiction over a motion to correct an illegal

sentence after the sentence has been executed, the sentencing proceeding [itself] . . . must be the subject of the attack. . . . Therefore, the motion is directed to the sentencing court, which can entertain and resolve the challenge most expediently." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Casiano*, supra, 282 Conn. 624–25.

Although "the [federal constitutional] right to appointed counsel extends to the first appeal [as] of right, and no further";[7] *Pennsylvania* v. *Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987); in Connecticut, a defendant who wishes to file a motion to correct an illegal sentence "has a [statutory] right [under § 51-296 (a)] to the appointment of counsel for the purpose of determining whether . . . [there exists] a sound basis for doing so. If appointed counsel determines that such a basis exists, the defendant also has the right to the assistance of such counsel for the purpose of preparing and filing such a motion and, thereafter, for the purpose of any direct appeal from the denial of that motion." *State* v. *Casiano*, supra, 282 Conn. 627–28.

This court previously has not had occasion to consider the procedure to be employed under *Casiano* when an indigent defendant is denied the appointment of counsel in connection with the filing of a motion to correct an illegal sentence on the ground that there exists no sound basis for such a motion. As we previously indicated, the Appellate Court concluded that *Anders* should govern such decisions primarily because "*Casiano* expressly equated the importance of a motion to correct to that of a criminal appeal . . . and thus extended the same right to appointed counsel to the former as to the latter." *State* v. *Francis*, supra, 148 Conn. App. 585. We disagree with that conclusion for several reasons.[8]

First, the only issue before this court in *Casiano* was whether the phrase "any criminal action," as used in § 51-296 (a); see footnote 2 of this opinion; was broad enough to encompass a motion to correct an illegal sentence. See *State* v. *Casiano*, supra, 282 Conn. 620–21. Thus, our sole purpose in considering the importance of a motion to correct within the overall framework of our justice system was to determine whether that motion constitutes a criminal action within the meaning of § 51-296 (a). See id. We concluded that it does, stating in relevant part: "Because a motion to correct an illegal sentence is heard by the sentencing court and implicates the legality of the proceeding at which the original sentence was imposed, the motion necessarily bears a close and direct relationship to the original sentencing proceeding. The evident nexus between a motion to correct an illegal sentence and the original sentencing hearing, coupled with the fact that a criminal defendant is constitutionally entitled to the assistance of counsel

at that original hearing . . . provides strong support for the defendant's claim that a motion to correct an illegal sentence falls within the purview of 'any criminal action' for purposes of § 51-296 (a)." (Citation omitted.) Id., 625. We further concluded that, "because our criminal statutes provide for a first appeal as of right, a defendant who challenges the legality of his or her sentence on direct appeal is entitled to the assistance of counsel in connection with that appeal. . . . It would be odd for the legislature to deny the defendant the right to counsel merely because the defendant has chosen a wholly proper, alternate route to challenge the legality of his sentence, namely, a motion to correct an illegal sentence, rather than by way of a direct appeal." (Citation omitted.) Id., 625–26. However, in resolving the issue before us in *Casiano*—whether a motion to correct is a criminal action within the meaning of § 51-296 (a)—we did not consider the entirely different question of whether the safeguards employed to protect a defendant's constitutional right to appointed counsel on direct appeal are also necessary to protect the statutory right to counsel in the much narrower context of a motion to correct an illegal sentence.

In deciding that question now, we are mindful that the United States Supreme Court has categorically rejected the notion "that . . . *Anders* . . . should be applied to a state-created right to counsel [for] postconviction review just because [*Anders*] applie[s] to the right to counsel on first appeal . . . ." *Pennsylvania* v. *Finley*, supra, 481 U.S. 556. That court has concluded that, because there is no underlying constitutional right to appointed counsel in postconviction proceedings, criminal defendants have "no constitutional right to insist on the *Anders* [procedure] which [was] designed solely to protect that underlying constitutional right." Id., 557; see also *Austin* v. *United States*, 513 U.S. 5, 8, 115 S. Ct. 380, 130 L. Ed. 2d 219 (1994) (right to *Anders* procedure "does not extend to forums for discretionary review").

Accordingly, states that elect to provide legal assistance in postconviction proceedings "have substantial discretion to develop and implement programs to aid prisoners seeking to secure postconviction review"; *Pennsylvania* v. *Finley*, supra, 481 U.S. 559; and any programs that they do adopt need not include "the full panoply of procedural protections that the [c]onstitution requires be given to defendants who are in a fundamentally different position—at trial and on first appeal as of right. In this context, [the United States Supreme Court has determined that] the [c]onstitution does not put [a] [s]tate to the difficult choice between affording no counsel whatsoever or following the strict procedural guidelines [set forth] in *Anders*." Id.

Nor do we believe that the state should be put to such a choice in the context of a postconviction motion

to correct, which bears no resemblance to a direct appeal in terms of the number and complexity of issues that may be raised, a fact that necessarily bears on the question of whether the same procedures are required to protect the right to effective assistance of counsel in both situations. Cf. *Mathews* v. *Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (even when constitutional rights are implicated, "[d]ue process is flexible and calls [only] for such procedural protections as the particular situation demands" [internal quotation marks omitted]). It goes without saying that direct appeals are an essential and critical stage of a criminal proceeding, intended to ensure that any errors committed at trial did not deprive the defendant of his right to a fair trial. See, e.g., *Gaines* v. *Manson*, 194 Conn. 510, 515, 481 A.2d 1084 (1984) ("[a]lthough there is no constitutional right of appeal . . . the right to appeal, once granted, invokes so significant a protection of liberty that it must be made available to all persons convicted of crimes" [citation omitted]). Claims that may be brought on direct appeal involve every aspect of the underlying proceeding, from arraignment to sentencing and virtually everything in between. To effectively prepare for such an appeal, therefore, appellate counsel must engage in an in-depth review of the entire record and applicable law, screening for all possible errors—including sentencing errors—that may have prejudiced the defendant and compromised his right to a fair trial. See, e.g., *McCoy* v. *Court of Appeals of Wisconsin, District 1*, 486 U.S. 429, 438, 108 S. Ct. 1895, 100 L. Ed. 2d 440 (1988) ("[t]he appellate lawyer must master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal").

In stark contrast, the claims that may be raised in a motion to correct an illegal sentence are strictly limited to improprieties that may have occurred at the sentencing stage of the proceeding. See, e.g., *State* v. *Lawrence*, 281 Conn. 147, 158, 913 A.2d 428 (2007) ("[i]n order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the trial leading to the conviction, must be the subject of the attack"). Thus, we previously have explained that, "for the trial court to have jurisdiction to consider the defendant's claim of an illegal sentence, the claim must fall into one of [several specific] categories of claims that, under the common law, the court has jurisdiction to review." Id., 155. Those claims, which are typically identified by the defendant prior to any involvement by the court or appointed counsel, are that the sentence (1) exceeds the applicable statutory maximum limits, (2) violates a defendant's right against double jeopardy, (3) is ambiguous, (4) is internally inconsistent, or (5) was imposed in an illegal manner. *State* v. *Parker*, 295 Conn. 825, 839, 992 A.2d 1103 (2010). Sentences imposed in an

illegal manner "have been defined as being within the relevant statutory limits but . . . imposed in a way [that] violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . ." (Internal quotation marks omitted.) Id.

In light of the limited and straightforward nature of the claims that may be raised in a motion to correct, the potential merits of such a motion frequently will be apparent to the court and appointed counsel from a simple review of the sentencing record. Cf. *State* v. *Cator*, 256 Conn. 785, 804–805, 781 A.2d 285 (2001) (trial court properly determined that its original sentence for murder and felony murder violated defendant's right against double jeopardy and properly merged convictions); *State* v. *Martin M.*, 143 Conn. App. 140, 147–48, 70 A.3d 135 (when record did not support defendant's claim that sentencing court improperly had relied on vacated kidnapping conviction, defendant could not establish that court relied on incorrect information in sentencing defendant), cert. denied, 309 Conn. 919, 70 A.3d 41 (2013); *State* v. *Mungroo*, 104 Conn. App. 668, 684, 935 A.2d 229 (2007) ("[p]lainly, the sentence of five years imposed by the [trial] court exceeds the statutory limit for the crime and must be corrected"), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008); *Gombert* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-10-4003855-S (August 22, 2013) (review of plea canvass demonstrated that petitioner's claims concerning plea agreement were not part of that agreement). Accordingly, we can perceive no reason why appointed counsel, having carefully reviewed the record for possible sentencing errors in light of governing legal principles and determined that none exist, must then be required to file an *Anders* brief identifying anything in the record that might arguably support a countervailing view, or why the trial court should then be required to undertake a full and independent review of the record to determine whether it agrees with defense counsel's assessment of the defendant's claimed sentencing error.[9]

In reaching our conclusion, we are also mindful that "[t]he value of any prophylactic rule . . . must be assessed not only on the basis of what is gained, but also on the basis of what is lost." (Internal quotation marks omitted.) *Montejo* v. *Louisiana*, 556 U.S. 778, 793, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009). Suffice it to say that we do not believe that the potential benefits of requiring the *Anders* procedure in the present context outweigh the costs, most notable among them being delays that inevitably would occur in the adjudication of a motion intended "to provide prompt, direct access to an uncomplicated legal process for correcting

the occasional erroneous or illegal sentence." *Gaddie* v. *State*, 566 N.E.2d 535, 537 (Ind. 1991); see, e.g., *United States ex rel. Green* v. *Washington*, 917 F. Supp. 1238, 1276 (N.D. Ill. 1996) (noting that "a properly prepared *Anders* [brief] is often more time-consuming than a merits brief" and "imposes special burdens not only on defense counsel, but also on the appellate tribunal itself, to scour the record to make certain that no [nonfrivolous] issues lurk there"). Such delays, moreover, would undoubtedly have an adverse effect on other criminal defendants by diverting already limited judicial resources away from their cases. This concern is no small matter in view of the fact that there is no limit to the number of motions to correct that may be filed by a particular defendant, as demonstrated by the defendant in the present case, who has now filed three such motions.[10]

We therefore conclude that, when an indigent defendant requests that counsel be appointed to represent him in connection with the filing of a motion to correct an illegal sentence, the trial court must grant that request for the purpose of determining whether a sound basis exists for the motion.[11] See *State* v. *Casiano*, supra, 282 Conn. 627. If, after consulting with the defendant and examining the record and relevant law, counsel determines that no sound basis exists for the defendant to file such a motion, he or she must inform the court and the defendant of the reasons for that conclusion, which can be done either in writing or orally. If the court is persuaded by counsel's reasoning, it should permit counsel to withdraw and advise the defendant of the option of proceeding as a self-represented party.[12]

Finally, we must address the state's contention that any deficiency in the procedure employed by the trial court in denying the defendant's request for counsel constituted harmless error because the court ultimately addressed the merits of the defendant's motion to correct. We note that this court has never considered whether the denial of counsel for the purpose of determining whether a sound basis exists to file a motion to correct may be a structural error, which is not subject to harmless error analysis. See, e.g., *State* v. *Gerardi*, 237 Conn. 348, 362, 677 A.2d 937 (1996) ("[e]rrors that are not subject to harmless error analysis go to the fundamental fairness of the [proceeding]"). We need not decide that question now, however, because our review of the record persuades us that the denial was harmful to the defendant.

As we previously indicated, the trial court did not appoint Lorenzen as the defendant's counsel so that he could conduct the sound basis review required by *Casiano*. Instead, as the Appellate Court explained, "Lorenzen was advised of the defendant's motion by the [court clerk] prior to the case being called, and he

reviewed the motion and certain other, unspecified files in his office, never describing in detail to the court the substance of any discussions with the defendant about the claims he wished to make in his motion. . . . [A]t [no] time after making his determination that the defendant's claim lacked sufficient merit to justify [his] appointment [as counsel, however, did Lorenzen] explain his findings to the defendant, as any attorney, appointed or privately retained, must do, at a bare minimum, out of courtesy, professional loyalty, and respect for his own client."[13] *State* v. *Francis*, supra, 148 Conn. App. 588–89. In light of the foregoing, we agree with the Appellate Court that "Lorenzen was not appointed to act as the defendant's personal counsel for the purpose of determining if the defendant's motion to correct was frivolous, but only to serve as a neutral agent of the court." Id., 589. Accordingly, we cannot accept the state's argument that the error was harmless merely in view of the fact that the defendant's motion was subsequently denied because that argument requires us to decide the harmlessness question on the basis of a motion that was prepared *without the assistance of counsel*. Because the defendant may have been entitled to the assistance of counsel in preparing the motion, and because such assistance might have aided the defendant in identifying a meritorious claim, we cannot say with any degree of confidence that the denial of counsel was harmless.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court with direction to appoint counsel to represent the defendant, in connection with his motion to correct an illegal sentence, in accordance with the procedures set forth in this opinion.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald, Robinson and Vertefeuille. Although Justice Palmer was not present at oral argument, he has read the briefs and appendices, and listened to a recording of oral argument prior to participating in this decision.

[1] This court upheld the defendant's murder conviction in *State* v. *Francis*, 228 Conn. 118, 120, 635 A.2d 762 (1993).

[2] General Statutes § 51-296 (a) provides in relevant part: "In any criminal action, in any habeas corpus proceeding arising from a criminal matter, in any extradition proceeding, or in any delinquency matter, the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant . . . ."

[3] In *Anders*, the United States Supreme Court outlined a procedure that is constitutionally required when, on direct appeal, appointed counsel concludes that an indigent defendant's case is wholly frivolous and wishes to withdraw from representation. See *Anders* v. *California*, supra, 386 U.S. 744. Under *Anders*, before appointed counsel may withdraw, he or she must provide the court and the defendant with a brief outlining anything in the record that may support the appeal, and the defendant must be given time to raise any additional relevant points. Id. Thereafter, the court, having conducted its own independent review of the entire record of the case, may allow counsel to withdraw, if it agrees with counsel's conclusion that the appeal is entirely without merit. Id.

[4] The defendant represented himself before the Appellate Court.

[5] The defendant also claimed that the trial court deprived him of his right to appointed counsel under the due process and equal protection clauses of the state and federal constitutions. *State* v. *Francis*, supra, 148 Conn. App. 575. In light of its conclusion that *Anders* governs the right to counsel in connection with a motion to correct, the Appellate Court did not address those constitutional claims; see id., 576–77 n.11; and, on appeal to this court, the defendant has not pursued them.

[6] We granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly determine that the trial court properly failed to follow a procedure similar to that set forth in *Anders* v. *California*, [supra, 386 U.S. 738], in denying the defendant's motion to correct an illegal sentence?" *State* v. *Francis*, 314 Conn. 908, 100 A.3d 401 (2014).

[7] See, e.g., *United States* v. *Myers*, 524 Fed. Appx. 758, 759 (2d Cir. 2013) (no federal constitutional right to counsel in connection with motion to reduce sentence); *United States* v. *Ramos-Yanac*, 454 Fed. Appx. 705, 706 (11th Cir. 2011) (no right to counsel because motion to reduce sentence is not critical stage of criminal proceedings); *United States* v. *Johnson*, 580 F.3d 567, 569 (7th Cir. 2009) (no right to counsel in connection with motion for sentence reduction); *United States* v. *Harris*, 568 F.3d 666, 668–69 (8th Cir. 2009) (no sixth amendment right to appointed counsel in sentence modification proceedings); *Pierce* v. *State*, 289 Ga. 893, 894, 717 S.E.2d 202 (2011) (no constitutional right to counsel to pursue motion to vacate void and illegal sentence); *Grandison* v. *State*, 425 Md. 34, 55–59, 38 A.3d 352 (2012) (no constitutional right to counsel in connection with motion to correct illegal sentence), cert. denied,     U.S.    , 133 S. Ct. 844, 184 L. Ed. 2d 667 (2013); *Gould* v. *State*, 151 P.3d 261, 269 (Wyo. 2006) (motion to correct is not critical stage of criminal proceedings), cert. denied, 552 U.S. 854, 128 S. Ct. 125, 169 L. Ed. 2d 88 (2007).

[8] We are mindful that, in construing a statute, under General Statutes § 1-2z, we may not look beyond the statutory language if that language, as applied to the facts of the case, is plain and unambiguous and does not yield a bizarre or unworkable result. In the present case, however, there is no dispute that the language of § 51-296 (a) is not plain and unambiguous with respect to the question presented and, furthermore, that the legislative history surrounding it is silent on the issue.

[9] We note that the Appellate Court, in reaching a contrary conclusion, also relied on the fact that it "previously [had] applied the *Anders* procedure to motions by appointed counsel to withdraw from other postconviction proceedings in which their indigent clients had a statutory right to appointed counsel under § 51-296 (a)." *State* v. *Francis*, supra, 148 Conn. App. 585. Specifically, the Appellate Court noted that, in *Franko* v. *Bronson*, 19 Conn. App. 686, 563 A.2d 1036 (1989), overruled in part on other grounds by *Vazquez* v. *Commissioner of Correction*, 88 Conn. App. 226, 869 A.2d 234 (2005), it had held that *Anders* governed the withdrawal of appointed counsel in habeas appeals. *State* v. *Francis*, supra, 585–87; see *Franko* v. *Bronson*, supra, 691–92. We are not persuaded that *Franko* supports the Appellate Court's determination, however, because the court in *Franko* provided no analysis or rationale for its decision, stating simply that, "[b]ecause the legislature has created a right to counsel in habeas corpus cases under § 51-296 [a], and in appeals therefrom . . . the right to appeal in habeas corpus actions should be extended the same protections as those set out in the *Anders* decision." *Franko* v. *Bronson*, supra, 692.

[10] We note that other courts that have considered the issue of whether to require the *Anders* procedure in postconviction proceedings have concluded that it is not required to safeguard a defendant's right to counsel in such proceedings. See *People* v. *Serrano*, 211 Cal. App. 4th 496, 499 n.2, 503, 149 Cal. Rptr. 3d 706 (2012) (declining to require *Anders*-like procedure in context of appeal from denial of motion to vacate conviction and approving alternative procedure); see also *Commonwealth* v. *Turner*, 518 Pa. 491, 495, 544 A.2d 927 (1988) (declining to mandate *Anders* procedure in context of postconviction relief proceeding); cf. *Shatney* v. *State*, 755 A.2d 130, 136 (R.I. 2000) (if it is determined that application for postconviction relief is without merit, then there is no right to counsel in connection with such application and any existing counsel may withdraw).

[11] We emphasize that, upon appointment, counsel must fully satisfy all applicable professional obligations to the defendant. Although appointed counsel's representation of the defendant ultimately may be of limited duration, it cannot be limited in any other respect because the defendant is

entitled to the effective assistance of counsel appointed under § 51-296 (a). See, e.g., *State* v. *Anonymous*, 179 Conn. 155, 160, 425 A.2d 939 (1979) ("[when] . . . a statute . . . or [rule of practice] . . . mandates the assistance of counsel, it is implicit that this means competent counsel").

[12] Of course, if the court is not completely satisfied with the reasons for counsel's conclusion, it may direct counsel to provide additional substantiation for his opinion or deny counsel's request to withdraw.

[13] Our review of the record also suggests that Lorenzen's conclusion regarding the merits of the defendant's motion was based on the erroneous assumption that, because the defendant's motion was his third motion to correct an illegal sentence, it was barred by the doctrine of res judicata. At the hearing, Lorenzen stated that his concerns with regard to the motion were based "not so much on legal merit but potentially on procedural grounds." He then went on to state that the problem with the defendant's claim "is more whether or not it's been previously addressed." The record also establishes that Lorenzen conveyed these concerns as the reason for his ultimate conclusion that the motion should not proceed. In its memorandum of decision addressing the merits of the defendant's motion, however, the trial court concluded that the doctrine of res judicata did not apply to the defendant's motion and that he was not, therefore, precluded from advancing his claims. Accordingly, the trial court's determination raises serious doubts with respect to Lorenzen's conclusion regarding the merits of the defendant's motion to correct.