******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* ERNEST FRANCIS
## (SC 20353)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The defendant, who had been convicted of murder, appealed to the Appellate
Court from the trial court's denial of his motion to correct an illegal
sentence. Prior to sentencing, the sentencing court was provided with
a criminal history report and a presentence investigation report, which
included a summary of the defendant's prior convictions of assault and
drug offenses. In his motion to correct, the defendant claimed that the
sentencing court relied on materially inaccurate information concerning
his criminal history and the circumstances of the underlying offense.
Specifically, the defendant claimed that the presentence investigation
report incorrectly indicated that he had been convicted of conspiracy
to sell cocaine, rather than conspiracy to possess cocaine, and that he
was convicted of assault in the second degree of an elderly person,
rather than assault in the third degree. The defendant also claimed that
the sentencing court mistakenly believed that he "grazed" the victim
before stabbing him. The trial court denied the defendant's motion,
concluding that there was no evidence that the sentencing court relied
on inaccurate information, that the court's statement that the defendant
"grazed" the victim was supported by the record, and that, even if that
statement was inaccurate, the court did not rely on the inaccuracy. The
Appellate Court upheld the trial court's denial of the motion to correct,
and the defendant, on the granting of certification, appealed to this
court. *Held* that the Appellate Court correctly concluded that the trial
court had not abused its discretion in denying the defendant's motion
to correct an illegal sentence:

1. The defendant could not prevail on his claim that the sentencing court
   had substantially relied on inaccurate information when imposing his
   sentence: the defendant's claim was belied by the record because, prior
   to sentencing, the prosecutor informed the sentencing court of the error
   in the presentence investigation report, the court correctly noted that
   the defendant's assault conviction was for assault in the third degree,
   and nothing in the record suggested that the court gave explicit attention
   to the inaccurate characterization of the defendant's assault conviction
   or that it considered the notation in the criminal history report incor-
   rectly identifying the assault victim as elderly; moreover, although the
   sentencing court incorrectly referred to the defendant's conspiracy con-
   viction as a conviction for conspiracy to sell cocaine, the court did not
   substantially rely on the precise nature of the conspiracy charge when
   imposing the defendant's sentence, as the court's recitation of the defen-
   dant's criminal history was used only to support the observation that
   the defendant had been convicted of three felony offenses before he
   had reached the age of nineteen.
2. There was no merit to the defendant's claim that the sentencing court
   substantially relied on a false recollection of how the victim died when
   imposing the defendant's sentence: the court's statement that the defen-
   dant had "grazed" the victim was not materially inaccurate because,
   although a medical examiner testified that he observed a single stab
   wound on the victim's chest, eyewitnesses testified that the defendant
   had made several stabbing motions toward the victim before inflicting
   the fatal blow; moreover, the court's primary focus was on the severity
   and location of the fatal wound rather than the exact number of times
   the defendant stabbed the victim.

Argued October 15, 2020—officially released April 16, 2021*

*Procedural History*

Substitute information charging the defendant with
the crime of murder, brought to the Superior Court in
the judicial district of Hartford and tried to the jury

before *Miano, J.*; verdict and judgment of guilty, from which the defendant appealed to this court, which affirmed the trial court's judgment; thereafter, the court, *Dewey, J.*, denied the defendant's motion to correct an illegal sentence, and the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Alvord* and *Conway, Js.*, which affirmed the trial court's decision; subsequently, the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (defendant).

*Matthew A. Weiner*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, former state's attorney, *Ronald G. Weller*, senior assistant state's attorney, and *Elizabeth S. Tanaka*, former assistant state's attorney, for the appellee (state).

*Opinion*

KAHN, J. The defendant, Ernest Francis, appeals from the judgment of the Appellate Court, which affirmed the trial court's denial of his motion to correct an illegal sentence. See *State* v. *Francis*, 191 Conn. App. 101, 110, 213 A.3d 536 (2019). In the present appeal, the defendant claims that the trial court improperly denied that motion because the sentencing court substantially relied on materially inaccurate information.[1] Specifically, the defendant claims that his sentence was based on inaccurate information concerning both (1) his criminal history, and (2) the particular manner in which he committed the underlying criminal offense. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The following facts and procedural history are relevant to this appeal. Following a jury trial, the defendant was convicted of murder in violation of General Statutes § 53a-54a (a). Id., 103. Prior to the defendant's sentencing, the sentencing court was provided with a criminal history report[2] and a presentence investigation report (PSI report). The PSI report indicated that the defendant had convictions arising out of three separate cases: (1) possession of narcotics with an offense date of June 29, 1989, (2) conspiracy to sell cocaine with an offense date of August 9, 1989,[3] and (3) assault in the second degree with an offense date of September 25, 1989.[4] The PSI report included a brief summary of the underlying facts related to the defendant's prior convictions of possession of narcotics and assault. A notation in the criminal history report indicated that the victim of the assault was over the age of sixty.

At sentencing, the prosecutor noted that there were some discrepancies between the defendant's prior criminal history and the information contained in the PSI report. Regarding the defendant's apparent conviction for conspiracy to sell cocaine, the prosecutor stated that the case involved "an undercover buy in which the defendant was the driver of a vehicle out of which the seller exited . . . ." The prosecutor stated that, although the defendant was charged with "conspiracy to commit sale of narcotics," there was "some question about what [crimes the defendant] was actually convicted of . . . [because] [t]he docket numbers and the statute numbers differ from the name of the charge."[5] The prosecutor went on to state that the "gravamen of the [underlying] offense was that [the defendant] was involved in a sale situation."

The prosecutor also informed the sentencing court that the defendant had been convicted of assault in the third degree, not assault in the second degree, as the PSI report indicated. The sentencing court asked the prosecutor if the assault conviction "concern[ed] hitting another person with a lead pipe," as the PSI report

suggested. The prosecutor responded in the affirmative. Explaining the discrepancy between the PSI report and the defendant's actual record, the prosecutor stated that "it wasn't a serious injury, and I think that's part of the reason that the case was later reduced to [an] assault in the third degree."

After hearing from, among others, the defendant's fiancée and brother, the sentencing court discussed the reasoning for its sentence. The sentencing court began by noting that "[t]here are several areas of inquiry the court must scrutinize in order to impose what it perceives to be a just sentence; the first is the nature of the offense; the second is the record, if any, of the defendant; the third is the background of the defendant; and the fourth is the impact on the victim's family." As for the nature of the offense, the sentencing court recounted the events leading up to the defendant's murder of the victim. While summarizing the relevant facts, the sentencing court remarked that, prior to inflicting the fatal knife wound, "the defendant raised his right hand with the knife and with a downward thrust apparently grazed the victim." The sentencing court also noted that the victim's death was a tragedy for his family, and remarked that "the value of human life is immeasurable . . . ."

Regarding the defendant's criminal record, the sentencing court stated: "Here is a young man that at age sixteen was convicted of possession of narcotics; at age seventeen was convicted of conspiracy to sell cocaine; at age seventeen, assault in the third degree; and now murder, and he's only nineteen years old. Three felony convictions at age nineteen." After discussing positive aspects of the defendant's background, including the defendant's family and employment history, the sentencing court made the following statement: "The purposes of sentencing are punishment, deterrence, rehabilitation. Deterrence may be illusory. I don't know if this case will be reported or be in the print media or not. I don't know. I think that the media should have more of a civic responsibility. This is an aside. Oftentimes, we're quick to print articles critical of the courts, quick to print articles concerning tragedies that occur on the streets, but yet not so quick to report dispositions in the courts. And I think that's important, not for Mr. Francis or the Mr. Francises to come, but the young people that are on the street that see the young men like Mr. Francis that appear macho, that are involved in drugs, that have cars, attractive new cars, that have jewelry, that have money, that have attractive ladies. And that's impressionable on young people. And when these people are involved in the criminal milieu, it's unfortunate that these young, impressionable people don't see where they end up. Because only if these cases I think every week or every month, the more serious narcotic cases and violent crimes cases of convictions, the pictures and articles should be put in the

paper in a special section for all to see. Otherwise, to say there's deterrence is, as I said, illusory." Shortly after making these remarks, the sentencing court sentenced the defendant to fifty years of incarceration.[6]

On December 30, 2016, the defendant filed the present motion to correct an illegal sentence, alleging that the sentencing court substantially relied on materially inaccurate information concerning his prior criminal history and the circumstances of the underlying offense when imposing the sentence.[7] See *State* v. *Francis*, supra, 191 Conn. App. 104–105. Specifically, the defendant claimed that the sentencing court substantially relied on the inaccurate information contained in the PSI report, which incorrectly indicated that he had been convicted of conspiracy to *sell* cocaine, and erroneously listed his prior assault conviction as a conviction for assault in the second degree. Additionally, the defendant claimed that the sentencing court relied on an inaccurate interpretation of the evidence presented at trial and mistakenly believed that he "grazed" the victim before fatally stabbing the victim in the chest. (Internal quotation marks omitted.) The defendant claimed that the record of the sentencing hearing established that the sentencing court substantially relied on these material inaccuracies when imposing the sentence.

The trial court denied the defendant's motion, concluding that there was no evidence that the sentencing court substantially relied on materially inaccurate information. In reaching that conclusion, the trial court reasoned that, although the PSI report contained errors regarding the defendant's prior criminal history, the record of the sentencing hearing did not demonstrate that the sentencing court substantially relied on those errors when arriving at its sentence. As for the defendant's claims concerning the facts of the underlying offense, the trial court concluded that the sentencing court's statement that the defendant "grazed" the victim was supported by the trial record and, even if the statement was materially inaccurate, the sentencing court did not substantially rely on the alleged inaccuracy. (Internal quotation marks omitted.)

The defendant thereafter appealed to the Appellate Court, claiming that the trial court improperly denied his motion. See *State* v. *Francis*, supra, 191 Conn. App. 103. The Appellate Court affirmed the decision of the trial court, holding that the trial court did not abuse its discretion in concluding that the sentencing court did not substantially rely on materially inaccurate information concerning the defendant's prior criminal history and the circumstances of the underlying offense. See id., 108–10. This certified appeal followed.[8]

We begin our analysis by noting both the applicable standard of review and the legal principles relevant to our consideration of the present appeal. Practice Book § 43-22 provides: "The judicial authority may at any time

correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner." As this court has previously stated, "[a] claim that the trial court improperly denied a defendant's motion to correct an illegal sentence is [typically] reviewed pursuant to the abuse of discretion standard."[9] (Internal quotation marks omitted.) *State* v. *Adams*, 308 Conn. 263, 269, 63 A.3d 934 (2013); accord *State* v. *Tabone*, 279 Conn. 527, 534, 902 A.2d 1058 (2006). "When reviewing claims under an abuse of discretion standard . . . great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Smith*, 313 Conn. 325, 336, 96 A.3d 1238 (2014); see also *State* v. *Bozelko*, 175 Conn. App. 599, 609, 167 A.3d 1128, cert. denied, 327 Conn. 973, 174 A.3d 194 (2017).

A sentence is imposed in an illegal manner when it is "imposed in a way [that] violates [a] defendant's right . . . to be sentenced by a judge relying on accurate information or considerations solely in the record . . . ."[10] (Internal quotation marks omitted.) *State* v. *Parker*, 295 Conn. 825, 839, 992 A.2d 1103 (2010). This principle emanates from the defendant's constitutional right to due process. See id., 843. "To prevail on such a claim as it relates to a [PSI] report, [a] defendant [cannot] . . . merely alleg[e] that his . . . report contained factual inaccuracies or inappropriate information." (Internal quotation marks omitted.) Id. Specifically, a defendant must show "(1) that the information was *materially* false or unreliable; and (2) that the trial court *substantially* relied on the information in determining the sentence." (Emphasis added.) *State* v. *Collette*, 199 Conn. 308, 321, 507 A.2d 99 (1986). "A sentencing court demonstrates actual reliance on misinformation when the court gives explicit attention to it, [bases] its sentence at least in part on it, or gives specific consideration to the information before imposing [the] sentence." (Internal quotation marks omitted.) *State* v. *Parker*, supra, 843 n.12.

In the present appeal, the defendant claims that the Appellate Court incorrectly concluded that the trial court did not abuse its discretion in denying his motion to correct an illegal sentence. Specifically, the defendant claims that his fifty year sentence was imposed in an illegal manner because the sentencing court improperly relied on (1) inaccurate information in both the criminal history report and PSI report, and (2) an incorrect belief that he "grazed" the victim before fatally stabbing him in the chest. (Internal quotation marks omitted.) We address these claims in turn.

I

The defendant first claims that the sentencing court substantially relied on inaccurate information in the criminal history report and the PSI report when imposing the sentence. Specifically, the defendant alleges that the information in those reports incorrectly indicated that he had been convicted of assault in the second degree of an elderly person, when in fact he had been convicted of assault in the third degree, and that he had been convicted of conspiracy to sell cocaine, when he had instead been convicted of conspiracy to possess cocaine. The defendant argues that the sentencing court's remarks demonstrate that it substantially relied on those inaccuracies when imposing his sentence. In response, the state argues that the trial court correctly concluded that the record of the sentencing hearing does not support the defendant's claim. Having reviewed the record, we agree with the state and conclude that the trial court did not abuse its discretion in concluding that the sentencing court did not substantially rely on inaccurate information concerning the defendant's criminal history.

Regarding his prior assault conviction, the defendant contends that the PSI report incorrectly stated that the conviction was for assault in the second degree and that the criminal history report erroneously identified the victim of the assault as a person over the age of sixty. The defendant argues that the sentencing court's use of the word "macho" to describe "young men like [the defendant]" demonstrates that the sentencing court substantially relied on the inaccurate description of his prior assault conviction and, as a result, viewed him as a "violent predator attacking the weak and infirm." (Internal quotation marks omitted.) The defendant's claim is belied by the record.

Prior to the imposition of the defendant's sentence, the prosecutor informed the sentencing court of the error in the PSI report and explained that the defendant had been convicted of assault in the third degree.[11] When summarizing the defendant's prior criminal history, the sentencing court correctly noted that the defendant's prior assault conviction was for an assault in the third degree. Nothing in the record suggests that the sentencing court gave explicit attention to the PSI report's inaccurate characterization of the defendant's assault conviction or that it considered the notation in the defendant's criminal history report that incorrectly identified the victim as elderly. Because the defendant has failed to establish that the sentencing court substantially relied on the inaccurate information concerning his prior assault conviction, we conclude that the trial court correctly determined that, "as to the assault charge, the [sentencing] court clearly did not sentence the defendant on the basis of any misinformation." (Internal quotation marks omitted.) The defendant's claim relating to his prior assault conviction, there-

fore, fails.[12]

The defendant next argues that the sentencing court substantially relied on the inaccurate description of his prior conspiracy conviction in the PSI report and, as a result, erroneously believed that he was a convicted drug dealer. In support of his claim, the defendant points to the sentencing court's specific reference to his prior conviction for "conspiracy to sell cocaine" and its general statement that "young men like [the defendant] . . . are involved in drugs," and have "new cars," "jewelry," "money," and "attractive ladies." The defendant argues that these remarks demonstrate that the sentencing court relied on the false belief that he had been convicted of conspiracy to sell cocaine when imposing the sentence.

Although we agree with the defendant that the sentencing court incorrectly referred to his prior conspiracy conviction as a conviction for conspiracy to sell cocaine, the sentencing court did not substantially rely on the precise nature of the conspiracy charge when imposing the sentence. The sentencing court's recitation of the defendant's criminal history was used to support only a single observation: that the defendant had been convicted of three felony offenses before the age of nineteen. As the trial court aptly noted, "[t]he disputed narcotics conviction, regardless of its precise nature, was a felony offense—one of the two [previous] felonies that were contained in the defendant's criminal history."[13] (Internal quotation marks omitted.) We agree with the trial court that the context in which the sentencing court incorrectly referred to the defendant's prior conspiracy conviction demonstrates that the sentencing court's focus was on the fact that the prior conviction was a felony and not whether it was a conviction for conspiracy to sell or possess cocaine.[14] The defendant's claim relating to the sentencing court's mischaracterization of his prior conspiracy conviction is, therefore, unavailing.

Likewise, the sentencing court's more generalized statement that "young men like [the defendant] . . . are involved in drugs" does not demonstrate that the court substantially relied on the PSI report's mischaracterization of his prior conspiracy conviction. The sentencing court had before it adequate evidence to support its general conclusion that the defendant was "involved in drugs" or the sale of drugs. As we previously noted, the prosecutor explained during the sentencing hearing that the defendant's prior conviction for conspiracy to possess cocaine involved "an undercover buy in which the defendant was the driver of a vehicle out of which the seller exited . . . ." Additionally, the defendant's PSI report indicated that, during the presentence investigation, the defendant himself admitted to having previously sold drugs.[15] At sentencing, defense counsel, in fact, expressly argued that the defendant's

honesty concerning his prior involvement in the sale of drugs should weigh in favor of leniency. Notwithstanding the PSI report's incorrect recitation of one of his prior drug convictions, the sentencing court could have reasonably concluded, based on the record before it, that the defendant had been "involved in drugs" or had sold drugs.

Although we conclude that the trial court correctly determined that the sentencing court's statements do not evince a reliance on materially inaccurate information, we recognize that some of those statements were inappropriate.[16] The trial court's statements, if taken literally, were not directed at the defendant but, rather, expressed the court's views concerning the perception that "young people" have of individuals involved in the "criminal milieu," the failure of the media to adequately cover the disposition of criminal cases involving illegal drug activity, and the resulting impact on the efficacy of general deterrence. Comments such as those made by the sentencing court during its self-described "aside" can, however, undermine the public's trust in the administration of justice. Generalizations, especially those that are based in pernicious stereotypes, have no place in our judicial system. Judges must be cognizant of the fact that all persons, no matter their lived experience, harbor implicit biases. Judges, therefore, have a responsibility to identify biases, both explicit and implicit, and to proactively guard against even the appearance that those biases might play any role whatsoever in the sentencing process.

## II

In his final claim, the defendant contends that the sentencing court substantially relied "on a demonstratively false recollection of how [the victim] died" when imposing the sentence. Specifically, the defendant argues that the evidence submitted at trial established that the victim was stabbed only once, and that the sentencing court's statement that the defendant had "grazed" the victim demonstrates that it misunderstood that evidence, and, as a result, incorrectly viewed the incident as a "prolonged, vicious attack" demonstrating a "clear and consistent intent to kill." In response, the state argues that the trial court correctly concluded that the sentencing court's statement was not materially inaccurate and that the sentencing court, when imposing the sentence, did not substantially rely on the number of times that the defendant stabbed the victim.

We do not agree with the defendant that the trial court's statement was materially inaccurate. During the trial, H. Wayne Carver II, the medical examiner who performed the autopsy of the victim, testified that he observed a single stab wound on the victim's chest while conducting the autopsy. Multiple eyewitnesses, however, also testified that the defendant made several stabbing motions toward the victim before inflicting

the fatal blow. One witness, Jennifer Green, testified that the defendant "brushed [the victim] with the knife on the shoulder" and "grazed" him before stabbing him in the chest. Another witness, Victor Lowe, testified that the defendant swung the knife toward the victim twice and that the first swing cut in half an ice pop that the victim was holding in his hand. Indeed, in our prior decision upholding the defendant's conviction, we noted that the defendant made "stabbing *motions* at the victim" after pulling the knife from behind his back. (Emphasis added.) *State* v. *Francis*, 228 Conn. 118, 121, 635 A.2d 762 (1993). On the basis of the record before us, we conclude that the trial court did not abuse its discretion by concluding that the sentencing court's statement that the defendant "grazed" the victim "was not materially false or inaccurate." (Internal quotation marks omitted.)

The trial court also correctly determined that "[t]here [was] no indication in the record that the [sentencing] court [in sentencing the defendant] relied minimally, let alone substantially, on the number of times the defendant thrust the knife at the victim . . . ." (Internal quotation marks omitted.) The transcript of the sentencing hearing demonstrates that the sentencing court's primary focus was the severity of the four inch knife wound that killed the victim. When describing the fatal wound, the sentencing court stated: "That blow, that large blade, as was testified to, apparently went four inches into the chest. . . . Carver testified that the aorta and the pulmonary arteries were severed or, if not severed completely, severed to a degree that medical intervention if on the scene immediately would have been futile." Conversely, the sentencing court's statement that the defendant "grazed" the victim was made in passing and was not repeated. In light of the sentencing court's particular focus on the severity and location of the fatal wound, as opposed to the exact number of times that the defendant stabbed the victim, we agree with the trial court's conclusion that the sentencing court, when imposing the sentence, did not substantially rely on the belief that the defendant apparently "grazed" the victim. Because the sentencing court did not substantially rely on that observation, and because that observation was reasonably based in the record, we conclude the trial court did not abuse its discretion in relation to this claim.

For the foregoing reasons, we conclude that the Appellate Court correctly concluded that the trial court did not abuse its discretion in denying the defendant's motion to correct an illegal sentence. We conclude that, although the defendant's criminal record and the PSI report contained inaccurate information concerning his prior criminal history, the trial court correctly determined that the defendant failed to meet his burden of demonstrating that the sentencing court substantially relied on inaccurate information when imposing the

sentence. Additionally, we conclude that the trial court did not abuse its discretion in determining that the sentencing court's statement that the defendant "grazed" the victim was not materially inaccurate and that, even if it were, the record does not support the defendant's claim that the sentencing court substantially relied on that alleged inaccuracy when imposing the sentence.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* April 16, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The sentence at issue in the present appeal was imposed by the court, *Miano, J.*, whereas the subsequent motion to correct an illegal sentence was decided by the court, *Dewey, J.* Unless otherwise noted, all references hereinafter to the sentencing court are to Judge Miano, and all references to the trial court are to Judge Dewey.

[2] This single page document contains a list of the defendant's prior convictions. According to a notation at the top of the document, the list was generated on February 18, 1992. We note that the defendant's brief refers to this document as the "1992 criminal history . . . ."

[3] The PSI report indicated that the defendant's conviction for conspiracy to sell cocaine resulted in a $380 fine.

[4] Although the defendant's convictions for possession of narcotics and assault arose from two separate incidents, the defendant was convicted and sentenced for both charges on the same day. There is some ambiguity in the record as to the specific sentences imposed in connection with these charges; however, the record is clear that the defendant ultimately received a total effective sentence of four years of incarceration, execution suspended, and four years of probation.

[5] During the course of the underlying trial, the prosecutor summarized this same discrepancy to the court as follows: "[T]he [s]tatute number that the defendant apparently pleaded to is possession with intent to sell. And what they did on the docket, is when he entered his plea, they changed the word[s] 'conspiracy to sell' to 'conspiracy to possess cocaine,' but they did not change the [s]tatutory reference, so I don't know if it's conspiracy to simply possess cocaine, or if it's a conspiracy to possess cocaine with the intent to sell."

[6] This court upheld the defendant's murder conviction in *State* v. *Francis*, 228 Conn. 118, 120, 136, 635 A.2d 762 (1993).

[7] This motion is the defendant's fourth motion to correct and is based on the same claims that the defendant, previously self-represented, raised in a prior motion filed in 2010. In *State* v. *Francis*, 322 Conn. 247, 140 A.3d 927 (2016), we concluded that the trial court, *Gold, J.*, "improperly failed to appoint counsel to assist the defendant in determining whether there was a sound basis for him to file such a motion;" id., 251; and remanded the case for further proceedings. Id., 270.

[8] This court granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that the sentencing [court] did not substantially rely on materially inaccurate information about the defendant?" *State* v. *Francis*, 333 Conn. 912, 215 A.3d 733 (2019).

We note that the precise question now under review is whether the Appellate Court properly reviewed the reasonableness of the actions of the trial court. As both parties acknowledge in their briefs, the certified question could be understood to suggest that the focus of our inquiry is the conduct of the sentencing court. We, therefore, reformulate the certified question as follows: "Did the Appellate Court correctly conclude that the trial court did not abuse its discretion in concluding that the sentencing court did not substantially rely on materially inaccurate information about the defendant?" See, e.g., *State* v. *Skipwith*, 326 Conn. 512, 516 n.4, 165 A.3d 1211 (2017) (court may reformulate certified question to conform to issue actually presented and to be decided on appeal). We note that both the state and the defendant have addressed this question in their respective briefs.

[9] In his brief, the defendant argues that the sentencing court's factual findings call for the application of a clearly erroneous standard of review. We reiterate that the proper focus of the inquiry presently before us is whether the trial court abused its discretion by denying the defendant's

motion to correct an illegal sentence. See footnote 8 of this opinion; see also, e.g., *State* v. *Charles F.*, 133 Conn. App. 698, 704–706, 36 A.3d 731, cert. denied, 304 Conn. 929, 42 A.3d 390 (2012).

[10] As this court has previously recognized, reliance on inaccurate information is only one example of how a sentencing court can impose a defendant's sentence in an illegal manner. See, e.g., *State* v. *Parker*, 295 Conn. 825, 839, 992 A.2d 1103 (2010) (noting that sentence is imposed in illegal manner when it is "imposed in a way [that] violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right that the government keep its plea agreement promises" (internal quotation marks omitted)).

[11] Although the prosecutor did not specifically draw the sentencing court's attention to the inaccurate description of the victim contained in the criminal history report, the prosecutor provided the sentencing court with a detailed description of the crime, which made clear that the victim was not over the age of sixty and that the incident did not involve serious injury.

[12] The defendant also claims that the PSI report inaccurately indicated that his sentence for assault in the third degree was four years of incarceration, execution suspended, and four years of probation. The defendant argues that, because such a sentence would have exceeded the statutory limits for the misdemeanor of assault in the third degree, the sentencing court's reliance on the fact that he was on probation at the time of the murder amounts to reliance on inaccurate information. We are unconvinced by the defendant's claim and agree with the Appellate Court that, "[r]egardless of the merits of the defendant's argument that his sentence for his conviction of assault in the third degree was illegal, the defendant does not dispute that he was on probation when he committed this murder; accordingly, this fact was not materially inaccurate when it was relied on by the sentencing court." *State* v. *Francis*, supra, 191 Conn. App. 108 n.4.

[13] When reviewing the defendant's criminal history, the sentencing court stated: "Here is a young man that at age sixteen was convicted of possession of narcotics; at age seventeen was convicted of conspiracy to sell cocaine . . . and now murder, and he's only nineteen years old."

[14] We reiterate that, during both the trial and sentencing hearing, the prosecutor informed the sentencing court that there was uncertainty in the record as to the actual charge that the defendant plead guilty to in relation to this narcotics offense. See footnote 5 of this opinion. The sentencing court was also reminded by defense counsel that the defendant's prior narcotics and assault convictions did not result in a sentence of incarceration.

[15] The PSI report also included the following description of the circumstances of the defendant's prior conviction for possession of narcotics: "This offense involved police officers observing the [defendant] while he approached motor vehicles and made exchanges. Upon his arrest, the [defendant] was found to be in possession of cocaine, marijuana, and $135 in cash."

[16] We refer, in particular, to the statement in which the sentencing court observed: "And I think that's important, not for Mr. Francis or the Mr. Francises to come, but the young people that are on the street that see the young men like Mr. Francis that appear macho, that are involved in drugs, that have cars, attractive new cars, that have jewelry, that have money, that have attractive ladies. And that's impressionable on young people."