******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MULLINS, J., with whom KAHN, J., joins, concurring in part and dissenting in part. I agree with and join parts I, II and III of the majority opinion. My disagreement with the majority centers on the question of whether, in the present case, the prophylactic procedures set forth in *Anders* v. *California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493, are required under the due process clause of the fourteenth amendment to the United States constitution. As the majority points out, for the *Anders* procedure to apply, first, there must be a constitutional right to counsel. We already have concluded that a parent has no right to counsel under the sixth amendment to the federal constitution or under article first, § 8, of the Connecticut constitution. See *State* v. *Anonymous*, 179 Conn. 155, 159, 425 A.2d 939 (1979). Nevertheless, the majority concludes that, pursuant to *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), the present case falls into the small subset of termination proceedings where there is such a constitutional right pursuant to the due process clause of the fourteenth amendment. I respectfully disagree with part IV of the majority opinion.

Rather, I agree with the reasoning of the Supreme Court of California, which balanced the factors expressed in *Lassiter* and concluded that the due process clause of the fourteenth amendment does not require an *Anders* procedure in this context. See *In re Sade C.*, 13 Cal. 4th 952, 990, 920 P.2d 716, 55 Cal. Rptr. 2d 771 (1996), cert. denied sub nom. *Gregory C.* v. *Dept. of Children's Services*, 519 U.S. 1081, 117 S. Ct. 747, 136 L. Ed. 2d 685 (1997). In *Lassiter*, the United States Supreme Court began its analysis with "the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Lassiter* v. *Dept. of Social Services*, supra, 452 U.S. 26–27. The court further explained that "[t]he dispositive question . . . is whether the three . . . factors [set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)], when weighed against the presumption that there is no right to appointed counsel in the absence of at least a potential deprivation of physical liberty, suffice to rebut that presumption and thus . . . lead to the conclusion that the [d]ue [p]rocess [c]lause requires the appointment of counsel when a [s]tate seeks to terminate an indigent's parental status." *Lassiter* v. *Dept. of Social Services*, supra, 31.

The three *Eldridge* factors that must be weighed against the presumption are "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." Id.,

27. The United States Supreme Court explained in *Lassiter* that "[w]e must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." Id. The majority acknowledges the presumption and the balancing that is required to overcome it but, in my view, overcomes the presumption too readily.

In assessing the strength of the first *Eldridge* prong—the private interests at stake—the majority did not consider the interests of the child, Taijha H.-B. As the Supreme Court of California explained in *In re Sade C.*, supra, 13 Cal. 4th 987, in a proceeding for termination of parental rights, the first prong of the *Eldridge* factors must necessarily include consideration of the rights of the child. See id. ("[t]he private interests at stake are those of the indigent parent and his child"). That court aptly reasoned that, "[w]hat the parent wants or needs is not necessarily what the child wants or needs. . . . If [their wants and needs are] consistent, any added protection arguably given to the parent might benefit the child as well. If inconsistent, however, such protection might effectively cause the child harm by helping the parent. The presumption, evidently, [when parental rights have been terminated] is that the wants and needs of parent and child are *inconsistent*. As stated, the appealed-from decision [the termination of parental rights], which is predicated on detriment the parent caused or allowed his child to suffer, is presumptively accurate and just." (Citation omitted; emphasis in original.) Id., 989.

In the present case, there is no indication that the child supports the appeal of the respondent, her mother, Sonya B., and, therefore, we are left with the presumption that the wants and needs of the parent and the child are inconsistent.[1] Therefore, weighing the *Eldridge* factors against the presumption against counsel, unless there is a deprivation of physical liberty, I would conclude that there is no constitutional due process right to state appointed counsel in this case. Consequently, if there is no constitutional right to counsel, the *Anders* procedure does not apply.

I acknowledge that, despite not having a constitutional due process right to counsel, parents still enjoy a statutory right to counsel in termination proceedings. See General Statutes § 45a-717 (b). That statutory right, however, does not mandate the use of the *Anders* procedure. See *State* v. *Francis*, 322 Conn. 247, 259, 262, 140 A.3d 927 (2016) (declining to require *Anders* procedure to safeguard purely statutory right to counsel for motion to correct illegal sentence in criminal cases and reasoning that, "because there is no underlying constitutional right to appointed counsel in postconviction proceedings, criminal defendants have no constitutional right to

insist on the *Anders* [procedure] which [was] designed solely to protect that underlying constitutional right" [internal quotation marks omitted]). Thus, I conclude that our state statutes and rules of practice provide the proper procedure to follow when an appellate attorney wishes to withdraw from an appeal of a decision terminating parental rights.

Under our law, for cases involving the termination of parental rights, if counsel reviews a case and concludes that there are no nonfrivolous issues to pursue on appeal, counsel is required to make this known to the judicial authority, as well as to the party and the Division of Public Defender Services. See Practice Book § 79a-3 (c) (2). Nothing more is required. The fact that nothing more is required does not mean that a trial judge's hands are tied. If a trial court has concerns related to the reasons for counsel's withdrawal, it can always inquire further. To be sure, this court previously has stated that, "if the court is not completely satisfied with the reasons for counsel's conclusion, it may direct counsel to provide additional substantiation for his opinion or deny counsel's request to withdraw." *State* v. *Francis*, supra, 322 Conn. 268 n.12. The fact that the trial court is not mandated to merely accept counsel's representation, without question, supports my view that the statutory scheme is sufficient to protect an indigent parent's right to counsel.

Accordingly, I respectfully concur and dissent.

[1] I agree with the majority that an accurate determination as to whether a child's parent should remain the parent is an interest shared by both the child and the parent. But, those interests may diverge once a trial court determines that termination of parental rights is in the child's best interest. Here, the trial court has made a final determination that the respondent should not remain the parent. "After the [s]tate has established parental unfitness . . . the court may assume . . . that the interests of the child and the natural parents . . . diverge." *Santosky* v. *Kramer*, 455 U.S. 745, 760, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1981). Thus, a valid determination has been made that "presumptively establishes that the child's welfare lies with someone *other than* [her] parent." (Emphasis in original.) *In re Sade C.*, supra, 13 Cal. 4th 990.

Consequently, given that a presumptively valid determination that the respondent's rights should be terminated has been made, the *Anders*-like procedures the majority now requires unnecessarily prolong the resolution of this matter. "There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged." *Lehman* v. *Lycoming County Children's Services Agency*, 458 U.S. 502, 513–14, 102 S. Ct. 3231, 73 L. Ed. 2d 928 (1982). The extended uncertainty that the *Anders*-like procedures usher in after a presumptively valid determination has been made that termination of parental rights is appropriate, is not in the child's best interest. This view is fortified by the fact that, in this particular case, the child, who has a right to do so, has not joined in the respondent's appeal, nor has she raised any of her own issues with respect to the accuracy of the trial court's determination that the respondent's parental rights should be terminated.